# State of Vermont v. Arthur Beshaw

[388 A.2d 381]

No. 66-76

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed June 6, 1978

*M. Jerome Diamond,* Attorney General, and *Susan R. Harritt,* Assistant Attorney General, Montpelier, for Plaintiff.

*James L. Morse,* Defender General, *Charles S. Martin,* Appellate Defender and *Richard A. Unger,* Law Clerk (On the Brief), Montpelier, for Defendant.

**Barney, C.J.** The defendant was under sentence and confinement at the St. Albans Correctional Center when the events giving rise to this prosecution arose. He was charged with kidnapping, attempted escape, incitement to commit a felony, and aggravated assault. On trial, the court directed a verdict of acquittal on the charge of inciting a felony. The jury found the defendant guilty of kidnapping and attempted escape, and of simple assault as a lesser included offense of the aggravated assault charge.

Two issues are preserved for review in his appeal here. The first relates to the denial, without evidentiary hearing, of the defendant's motion for severance of the charges for separate trial. The second involves a claim of prejudice based on an incident in which it was alleged that both the defendant and one of his witnesses, both in handcuffs, outside of the courtroom, came within the view of members of the jury. This happened on the third day of trial.

A statement of the circumstances giving rise to the charges is essential. In August of 1975 there was a disturbance in the safekeeping wing of the St. Albans Correctional Center. Certain inmates, including the defendant, had taken several people hostage and sought to negotiate for release or escape. Some of the hostages were themselves inmates, and others were custodial officers. One of the officers was struck by a broken chair leg wielded by the defendant. Another officer was injured in the episode. After three hours, during which negotiations for the safety of the hostages were carried on, the safekeeping wing was retaken by law enforcement officers and corrections control reinstituted. The criminal charges involved were subsequently brought.

We turn first to the question of severance. The defendant's motion, made under V.R.Cr.P. 14(b), had two aspects. It first asked that the trial of this defendant be severed from those of the others also charged in connection with the disturbance

at the Correctional Center. This part of the motion was granted, giving the defendant his requested separate trial.

The second aspect sought to have the charges severed for separate trials. The four charges were brought in two state's attorney's informations, the first charging kidnapping and attempted escape, and the second charging incitement of another to escape and aggravated assault. The motion called for separate trials for each of the offenses charged. This was denied at the omnibus hearing, but with leave to renew the request later.

This was done twice, the last time just prior to the jury selection at the commencement of trial. Each time the relief was denied. Coupled with the severance issue were motions to dismiss, made under V.R.Cr.P. 12(e) (1), in connection with which an evidentiary hearing was sought and denied.

■ V.R.Cr.P. 14(b) (1) (A) provides that whenever two or more offenses have been joined for trial "solely" on the ground that they are of the same or similar character, the defendant is entitled to severance as a matter of right, if he requests it. That is not the circumstance of the case before us, since the several charges involved here derive from a single happening, and occurred in one geographical location and within a restricted and uninterrupted time sequence. This distinguishes it from *Drew* v. *United States,* 331 F.2d 85 (D.C. Cir. 1964), where only the joinder of offenses of like character was involved.

■■ In such circumstances the issue is whether severance will, in the judgment of the trial court, promote a fair determination of the defendant's guilt or innocence of each offense. It is quite apparent that, with or without severance, identical evidence of the course of events in connection with all of the charges would be appropriately before the jury with respect to the trial of any of the charges that were in fact submitted to the jury in this case. The fact that certain evidence relates to the commission of a crime other than the one charged does not make the evidence inadmissible if it is otherwise admissible. *State* v. *Levine,* 117 Vt. 320, 327, 91 A.2d 678 (1952).

Nothing in the record demonstrates any unfair prejudice resulting from the denial of severance. Perhaps even more significant, the defendant presented no substantive support to the trial court in support of his application for severance, as required by *State* v. *Moore*, 131 Vt. 149, 155, 303 A.2d 141 (1973). In the presentations before this Court, particularly in the brief, the defendant argues that this gap should be bridged by the defendant's unfulfilled request below for an evidentiary hearing on the issue of the sufficiency of the State's evidence to support prosecution of the charges. But in no way do such motions make any attempt to demonstrate a potential for prejudice if severance was denied, the only concern in this portion of the appeal.

Such interrelatedness, moreover, was first intimated to the lower court after trial, in the defendant's motions for judgments of acquittal and new trial. Even in that untimely context, nothing was produced on which a ruling in favor of severance based on any prejudice to the defendant could be justified.

The State quite properly points out that the jury gave careful and conscientious consideration to the matters it had in charge. The jury's reduction of the aggravated assault charge to simple assault evidences the close attention the jury gave the trial court's instruction and the studious evaluation of the evidence. Nothing of passion, prejudice or confusion appears here. The denial of the motion to sever the charges against the defendant was both supportable at law and without prejudice.

▮ The second issue relates to the presence, in view of the jury, but outside the courtroom, of the defendant and at least one other in handcuffs. This prompted a motion for mistrial. It is the denial of that motion, renewed in motions after the verdict, that is at issue here.

The exposure apparently took place at a time when, after court proceedings, the defendant was being returned to custody. There is no claim made here that it was anything but accidental, or that there was any prejudicial exposure of a manacled defendant or witness in court during the proceedings. Even so, in the usual case, the question of the prejudicial

impact upon the rights of the defendant would require careful examination.

However, this is not the usual case, and demonstrates the critical nature of facts with respect to the application of legal principles. This defendant was a prisoner, and was known to the jury as a prisoner, all independent of these charges against him. Since this situation was fully known to the jury, the claim, without any demonstrative support, that the fact that he was handcuffed in a situation where a juror might have seen him, would alone overwhelm any such juror's ability to fairly judge him, is untenable. The restraints on the defendant here do not appear to measure up to the chain and shackles described in *State* v. *Polidor*, 130 Vt. 34, 39, 285 A.2d 770 (1971), and we find even less suggestion of any possible prejudice than in that case.

Whether the jury would have found a cautionary instruction concerning the handcuffs helpful, or, under the circumstances, merely insulting to their intelligence, we need not now decide. The defendant's position with respect to its absence in the charge is compromised by his failure to ask for it, or object to its omission before the jury retired. V.R.Cr.P. 30.

*Judgment affirmed.*