### State of Vermont v. Stephen R. Carter

[593 A.2d 88]

No. 87-263

Present: **Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.**

Opinion Filed May 10, 1991

438

*Dale O. Gray,* Caledonia County State's Attorney, St. Johnsbury, and *Rosemary Hull* and *Gary S. Kessler,* Department of State's Attorneys, Montpelier, for Plaintiff-Appellee.

*Walter M. Morris, Jr.,* Defender General, and *Henry Hinton* and *William A. Nelson,* Appellate Defenders, Montpelier, for Defendant-Appellant.

**Allen, C.J.** Defendant appeals from a conviction, after a jury trial, of burglary, petty larceny, and carrying a weapon during the commission of a felony. We affirm.

The State presented evidence that defendant assisted a 12-year-old boy in entering a trailer and stealing a jug of coins. The boy testified that defendant had a .22 caliber pistol in his pocket during the incident, and the State based the weapon charge on this evidence. The informations were docketed separately, and the trial court granted the State's motion to consolidate the three charges. Defendant moved to sever the gun charge from the two-count information charging burglary and petty larceny, but the motion was denied on the theory that no prejudice would result from a common trial of charges based on events that occurred at the same time and place. The jury returned guilty verdicts on all three charges, and following denial of defendant's motions for acquittal and new trial, he filed the present appeal.

Defendant argues first that the trial court erred in denying his motion to sever under V.R.Cr.P. 14(b)(1) because severance was necessary for a "fair determination of the defendant's guilt

or innocence of each offense."[1] He contends that since gun possession evidence would not be admissible in a separate burglary and larceny case, failure to sever the charges gave the State the improper advantage of making defendant appear worse in the jury's eyes. In any event, he adds that conviction on the felony of burglary was a prerequisite to conviction on the gun charges.[2] The prejudice was therefore compounded, by his theory, since evidence on the weapon charge tended to inflame the jury and enhance the likelihood of a conviction on the burglary charge.

■ ■ The argument is not persuasive and in fact misconstrues the goals and priorities of Rule 14. Whenever two or more offenses have been joined for trial solely on the ground that they are of the same or similar character, the defendant is entitled to severance as a matter of right under V.R.Cr.P. 14(b)(1)(A). *State v. Chenette*, 151 Vt. 237, 242, 560 A.2d 365, 370 (1989). This rule does not apply, however, where the charges involved "derive from a single happening, and occurred in one geographical location and within a restricted and uninterrupted time sequence." *State v. Beshaw*, 136 Vt. 311, 313, 388 A.2d 381, 382 (1978).

In the present case the evidence revealed more than random events of the same or similar character. Defendant undertook a

---

[1] V.R.Cr.P. 14(b)(1) reads as follows:

 (1) *Severance of Offenses.*

 (A) Whenever two or more offenses have been joined for trial solely on the ground that they are of the same or similar character, the defendant shall have a right to a severance of the offenses.

 (B) The court, on application of the prosecuting attorney, or on application of the defendant other than under subparagraph (A), shall grant a severance of offenses whenever,

 (i) if before trial, it is deemed appropriate to promote a fair determination of the defendant's guilt or innocence of each offense; or

 (ii) if during trial upon consent of the defendant, it is deemed necessary to achieve a fair determination of the defendant's guilt or innocence of each offense.

[2] 13 V.S.A. § 4005 states:

 A person who carries a dangerous or deadly weapon, openly or concealed, while committing a felony or while committing an offense under section 667 of Title 7, or while committing the crime of smuggling of an alien as defined by the laws of the United States, shall be imprisoned not more than five years or fined not more than $500.00, or both.

burglary with the gun on his person. In drawing a line between that which is simply of the same or similar character and that which is part of a single happening, the trial court could fairly infer that the carrying of the loaded pistol was *connected* to the burglary, whether or not defendant *used* the pistol in any active way or intended to do so. The court did not err in concluding that the carrying of the pistol and the burglary were part of a single happening. Once this conclusion is reached, the argument for severance on grounds that evidence of the gun possession would not be admissible in a separate trial for burglary and larceny lacks practical or logical support.

██ ██ Defendant also contends that the trial court should have granted the severance request under V.R.Cr.P. 14(b)(1)(B), which allows a trial judge to grant severance to allow for a "fair determination" of defendant's guilt or innocence with respect to each offense charged. The trial court did not agree with defendant that separate trials were required to reach a fair determination of guilt or innocence, and it had wide latitude to reach that conclusion under the Rule. As we stated in *State v. Richards*, 144 Vt. 16, 470 A.2d 1187 (1983), "'[t]he issue is whether the severance will, in *the judgment of the trial court*, promote a fair determination of the defendant's guilt or innocence of each offense.'" *Id.* at 19, 470 A.2d at 1189 (emphasis in original) (quoting *Beshaw*, 136 Vt. at 313, 388 A.2d at 382). The burden of showing "unfair prejudice" from the denial of severance is defendant's. *Chenette*, 151 Vt. at 243, 560 A.2d at 370.

██ We are not persuaded that the court abused its discretion. There was sufficient evidence that defendant had the weapon in his pocket, and the transcript does not reveal any attempt by the State to exaggerate the facts or to inflame the jury in its consideration of the burglary and petty larceny charges. The court did not err in denying severance.

██ Defendant contends next that he should have been acquitted of the weapons offense because 13 V.S.A. § 4005 requires a "relationship" between the underlying felony and the carrying of the weapon and the record is devoid of evidence of such relationship. The State need not show that defendant knowingly carried the weapon. *State v. Kerr*, 143 Vt. 597, 605, 470 A.2d 670, 674 (1983). "The element of scienter is simply not

a part of the statute, and we will not read into it such a require-ment." *Id.* at 605, 470 A.2d at 674. We do find persuasive, how-ever, the contention that there is a line at which the relationship between the carrying of a dangerous or deadly weapon and the commission of the underlying felony becomes so attenuated as to fall outside the purview of the statute. The purpose of the analogous federal statute, which provided that it was a crime to "carr[y] a firearm unlawfully during the commission of any fel-ony," 18 U.S.C. § 924(c)(2) (1982), *amended by* 18 U.S.C. § 924(c)(2) (Supp. II 1984), was interpreted to be the imposition of more severe sanctions "where firearms facilitated, or had the potential of facilitating, the commission of a felony." *United States v. Stewart*, 779 F.2d 538, 540 (9th Cir. 1985), *cert. denied*, 484 U.S. 867 (1987). It was not within Congress's intent, the court concluded, "'to penalize one who happens to have a gun in his possession when he commits an entirely unrelated offense.'" *Id.* (quoting *United States v. Moore*, 580 F.2d 360, 362 (9th Cir.), *cert. denied*, 439 U.S. 970 (1978)). Likewise, we do not ascribe such an intent to the Vermont Legislature.

 Our agreement with defendant that § 4005 requires a relationship between the carrying of a weapon and the underly-ing felony does not compel agreement with his argument that such a relationship has not been shown here. Contrary to de-fendant's assertion, this relationship does not require that the weapon be used or brandished. The inclusion of the word "con-cealed" in the statute belies this assertion. See also *United States v. Power*, 881 F.2d 733, 737 (9th Cir. 1989) (to satisfy relationship under federal statute, defendant "need not display or brandish a firearm"). It is enough that the weapon had the potential of facilitating the commission of the underlying felony. The evidence in this case, when viewed in the light most favor-able to the State, *State v. French*, 152 Vt. 72, 81–82, 564 A.2d 1058, 1063 (1989) (standard on review of a motion for judgment of acquittal), showed that defendant loaded his pistol the night before the burglary and had it in his pocket during the commis-sion of the burglary. That a weapon has the potential of facilitat-ing the felony of burglary is patent. Defendant was not entitled to a judgment of acquittal.

 Alternatively, defendant contends that he should be granted a new trial because of the trial court's failure to in-

struct the jury that it must find a relationship between the carrying of the gun and the commission of the burglary. Defendant concedes that there was no request to instruct, or objection to the failure to instruct, on this relationship. Accordingly, our review is limited to plain error, *State v. Roy*, 151 Vt. 17, 23, 557 A.2d 884, 888 (1989), which will not be found unless the error is of a magnitude sufficient to constitute a miscarriage of justice. *State v. Davignon*, 152 Vt. 209, 222, 565 A.2d 1301, 1308 (1989); *State v. Giroux*, 151 Vt. 361, 365, 561 A.2d 403, 406 (1989). There was no plain error here. The instruction given expressly required for conviction that the jury find beyond a reasonable doubt "that the defendant carried a weapon while that burglary was being committed." As stated above, the relationship between the carrying of a weapon and the commission of burglary is patent. We find these two things in combination enough to overcome any fear of a miscarriage of justice. See *Roy*, 151 Vt. at 24, 557 A.2d at 889 (combination of ample evidence and an approximate instruction sufficient to refute claim of plain error).

Finally, defendant argues that the trial court's failure to allow disclosure to the jury of the dismissal of certain burglary charges against the juvenile accomplice unrelated to the present offense violated defendant's Confrontation Clause rights, citing *Davis v. Alaska*, 415 U.S. 308 (1974). The jury was told that the charges against the juvenile for his part in the instant break-in had been dropped by the State, and hence defendant's purpose of demonstrating a potential motive for bias by the witness was achieved, at least in part. The court had allowed discovery of the juvenile's other records for purposes of cross-examination of the witness to further demonstrate his bias, and also conducted an in camera inspection of the juvenile court record to confirm the information supplied by the State.

On cross-examination, the witness purported not to recall information about the status of the State's cases against him, responding to specific questions elaborating each alleged offense by failing to recall it. One example:

Q. Do you remember discussing with him [Trooper] a theft of property from the Aldrich residence on ,School

Street in West Burke in which a Kawasaki dirt bike, a Stihl chain saw, and five gallons of gas in a can were stolen?

A. No.

Counsel then brought out in questioning that the witness had been placed in a diversion program but had subsequently been removed from diversion "[b]ecause I got in trouble." The following exchange then occurred:

Q. When you were in juvenile court back in November, were you charged with breaking into the Jenks home in Burke Hollow and stealing jewelry?

A. I don't know.

Q. You don't know if you were charged or not?

A. Yup.

Q. Do you know if you were charged with that now?

A. No.

. . . .

Q. Do you know if that charge was dropped?

A. No.

Q. That charge was dropped, wasn't it?

A. I don't know.

Q. Well, you were also charged with a breaking into Pamela Lafaivre's trailer and stealing the jug of coins, weren't you?

A. Yes.

Q. And that charge was dropped, wasn't it?

A. I don't know.

Defense counsel then asked the court to "[d]isclose to the jury the status of these cases in juvenile court," but the request was refused. As a result of the court's ruling, the defense was unable to document for the jury that another burglary case involving the juvenile had been dismissed. Hence, the asserted loss of the confrontation right.

But unlike the trial court in *Davis v. Alaska,* the court in the present case did not bar cross-examination about the witness's record, nor did it impose restrictions on the kinds of questions

defendant's counsel was allowed to ask.[3] See *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) ("By thus cutting off all questioning about an event that the State conceded had taken place and that a jury might reasonably have found furnished the witness a motive for favoring the prosecution in his testimony, the court's ruling violated respondent's rights secured by the Confrontation Clause."); see also *United States v. Klauer*, 856 F.2d 1147, 1149 (8th Cir. 1988) (sixth amendment not violated by denial of right to cross-examine witness about specifics of sentencing concessions where jury was already aware of sentencing concessions as part of plea agreement); *United States v. De Parias*, 805 F.2d 1447, 1452 (11th Cir. 1986) (sixth amendment not violated where defendant allowed to cross-examine witness about most, but not all, details of plea agreement), *cert. denied*, 482 U.S. 916 (1987).

In his brief, defendant concedes that the jury knew that the witness had received immunity for the case at trial and that he had other criminal charges pending. On appeal, his sole confrontation claim is that the trial court refused to allow evidence to be introduced about dismissal of the unrelated burglary charge. But while *Davis v. Alaska* guaranteed defendant the opportunity to effectively cross-examine the witness as part of defendant's right of confrontation, "it does not follow that the right to cross-examine is denied by the State whenever the witness' lapse of memory impedes one method of discrediting him." *Delaware v. Fensterer*, 474 U.S. 15, 19 (1985) (per curiam).

In the present case the defense was able to leave a clear impression of both the extent of the witness's involvement in criminal activity and his lenient treatment by the State. Thus, the instant case is unlike *McKinzy v. Wainwright*, 719 F.2d 1525, 1527 (11th Cir. 1983), where "[t]he questions that might have established a motive for the witness to try and please the state were entirely unexplored." The juvenile's reluctance or inabil-

---

[3] And unlike *Pennsylvania v. Ritchie*, 480 U.S. 39, 43–44 (1987), here there was no deprivation of a right to pretrial discovery in aid of effective cross-examination. The trial court released the child witness's record to defense counsel, who asked detailed questions of the witness based upon that information.

ity to answer even simple questions about the disposition of past criminal charges did not prevent the defense from bringing those charges and their disposition to the jury's attention.[4] Nor can it be said, viewing the record as a whole, that introduction of the conviction record would have significantly added to the jury's impression that the witness was biased in favor of the prosecution. See *Klauer*, 856 F.2d at 1150; *De Parias*, 805 F.2d at 1452. The witness never affirmatively denied his involvement in the criminal activity about which counsel inquired, claiming no recollection or knowledge of any of the events raised in the questions to him. Given the jury's knowledge of the witness's immunity in connection with the charges at trial and his failure to rebut the facts about the unrelated offenses put to him in the form of questions on cross-examination, it cannot fairly be said that barring introduction of the witness's criminal record in order to further impeach him unduly limited the scope of cross-examination or limited defendant's right of confrontation. As the court said in *United States v. Turcotte*, 515 F.2d 145, 151 (2d Cir.), *cert. denied*, 423 U.S. 1032 (1975), "[i]f the jury is otherwise in possession of sufficient information concerning the witness' possible motives for testifying falsely in favor of the government, there is no abuse of discretion if a judge restricts the cross-examination of a government witness."

A similar issue arose in *United States v. Ferguson*, 776 F.2d 217 (8th Cir. 1985), *cert. denied*, 475 U.S. 1020 (1986), where defendant sought to impeach a prosecution witness by introducing evidence of the witness's prior convictions, which had been

---

[4] In his closing argument, counsel for defendant summarized the basis for the potential bias of this witness with specificity:

> [The witness] knew he was in a world of trouble and he was looking for a way out. [The witness] got the idea that it would go easier on [him] if he helped Trooper DeLisle and the Vermont State Police. This only makes sense. This is good police work. In fact, it did go easier on [him]. He was faced with a series of—a large series of very serious crimes; yet not only was he referred to Diversion, a program for first time offenders resulting in no court record, but other charges were dismissed, including the charge that he broke into Pam Lafaivre's trailer, walked off with that jug full of coins.
>
> I suggest to you the reason that charge was dismissed was [so that] he can sit in that witness stand pointing the finger at Mr. Carter. Without [the witness's] testimony, there . . . would be no case against Mr. Carter.

expunged pursuant to state law. Defendant's counsel cross-examined the witness, but the trial court barred the defense from introducing the expunged convictions. In affirming that ruling, the court stated:

> A violation of the confrontation clause occurs only where the limitation on the cross-examination could reasonably be expected to have a substantial effect on the jury's decision. *United States v. Farnsworth*, 729 F.2d 1158, 1162 (8th Cir. 1984). In the instant case, appellant was allowed to question, and did so question, Marilyn Martin as to the underlying facts of her prior convictions for fraud. Appellant was, therefore, afforded at least some opportunity to impair Marilyn Martin's credibility and to bolster his defense. *United States v. Witschner*, 624 F.2d 840, 844–45 (8th Cir.), *cert. denied*, 449 U.S. 994 . . . (1980). Under these circumstances, appellant was not denied his sixth amendment right to confront witnesses.

776 F.2d at 223. In the case at bar there had been much more than "some opportunity to impair" the witness's credibility, since the jury was aware that he had received immunity from prosecution for the charges facing defendant. We do not hold that merely asking a question of a witness constitutes evidence of the facts implied as premises of the question. But here the issue is whether the defense had an adequate opportunity to demonstrate through cross-examination the possible bias of a key witness, and we have often pointed out that the mere asking of a question or the making of a statement, unaided by corroborating evidence, may have a significant impact on a jury. *State v. Broe*, 146 Vt. 135, 140–41, 498 A.2d 1039, 1042–43 (1985) (remark by counsel during final argument can never be "within permissible bounds" where it is a statement of evidentiary fact that is simply not true); *State v. Barcomb*, 136 Vt. 141, 142, 385 A.2d 1089, 1089 (1978) (fair trial right infringed by prosecutor's questions about statements defendant denied making and State did not attempt to prove).

Reading the record as a whole, we conclude that defendant's Confrontation Clause rights were not violated by the

court's refusal to allow the introduction of the witness's juvenile court records.

*Affirmed.*