2012 VT 73

## State of Vermont v. Jeffrey Brandt

[59 A.3d 141]

No. 10-468

Present: **Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.**

Opinion Filed August 31, 2012

*William H. Sorrell*, Attorney General, and *David Tartter*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Matthew F. Valerio*, Defender General, and *Joshua S. O'Hara*, Appellate Defender, Montpelier, for Defendant-Appellant.

¶ 1. **Dooley, J.** Defendant Jeffrey Brandt, convicted by a jury of two counts of second-degree aggravated domestic assault and one count of driving with a license suspended (DLS), now appeals. He makes three arguments: (1) the trial court erred in denying his motion to sever the charges and grant him separate trials; (2) the jury instruction on excited utterances improperly bolstered the credibility of the complainant's out-of-court statement; and (3) the prosecutor's opening and closing arguments were inappropriate and denied him a fair trial. We affirm.

¶ 2. From the testimony of the complainant, the following story emerged. On the evening of August 7, 2009, defendant awoke the complainant, his wife, and told her that he wished to take their shared vehicle, a GMC Jimmy, to a party. The complainant pointed out to defendant that she had to work in the morning, so he needed to return with the car before she had to leave the next day. This spurred an argument, and defendant expressed that he felt as if she had given him a curfew. The argument led to violence when defendant threw his wife down, her head striking an unidentified hard object — either the coffee table or some boxes. Defendant then drove to the party, while the complainant lay dazed in the back seat. At the party, she managed to find a ride home from a friend, who observed a bump on the back of her head.

¶ 3. Defendant came back to the house at around five o'clock the following morning. The complainant was unable to get the keys to the vehicle from defendant. She unsuccessfully tried to call her work to say she would be late. Eventually, she decided to leave defendant and began packing her things. Defendant locked her out of the car, and a second quarrel began. Again, the argument escalated. Defendant grabbed the complainant's face and began striking her head against the living room wall. She managed to break away from defendant and fled from the house,

running to the nearby grocery store, A&B Beverage. She entered the store and approached an employee, exclaiming that she had been attacked and that he should call the police for help.

¶ 4. Shortly after the complainant entered the store, defendant arrived in the vehicle. The store owner led the complainant, panicked, into the back of the store, while the employee called 911. At the direction of the owner, a customer of the store opened the door and informed defendant that he was not welcome. He returned to the vehicle and drove away. The complainant was taken to a nearby hospital.

¶ 5. On November 6, 2009, defendant was charged with two counts of domestic assault and · one count of driving with a suspended license. One count of assault was for defendant's actions during the evening of August 7; the other was for his actions during the morning of August 8. The DLS charge was for his driving to and from the grocery store on August 8. Following a trial, the jury convicted defendant of all three charges. Defendant appeals, raising three assertions of error.

¶ 6. We first address defendant's claim that the trial court erred by failing to sever the two assault charges and grant defendant separate trials.* Defendant contends that Vermont Rule of Criminal Procedure 14 provided him with an absolute right to severance because the charges were not sufficiently related and were joined solely based on their similar character. The trial court ruled that the charges were not joined solely based on their similar character. The court reasoned that because "[a]ll 3 incidents occurred on August 7 and 8, 2009, and they involve the same parties" that therefore "[t]his is a series of events."

¶ 7. The issue involves two rules of the Vermont Rules of Criminal Procedure. The first is Rule 8(a), which provides four possible grounds for charging a defendant with more than one offense in a single information: (1) the offenses "are of the same or similar character"; (2) they "are based on the same conduct"; (3) they are based on "a series of acts connected together"; or (4) they constitute "parts of a single scheme or plan." The second is Rule 14, which controls severance of offenses joined in an

---

* Defendant's motion sought separate trials for each of the counts, the two domestic assaults and the driving with license suspended. The trial court denied the motion with respect to all of the counts. Defendant has not, however, appealed the failure to sever the DLS charge.

information in order to provide separate trials on the offenses. It provides a defendant the right to severance if the offenses were joined solely for the first reason stated above — that they are "of the same or similar character." V.R.Cr.P. 14(b)(1)(A). If the offenses were joined for any of the other reasons, the court may sever the offenses before trial if "it is deemed appropriate to promote a fair determination of the defendant's guilt or innocence of each offense." *Id.* 14(b)(1)(B)(i).

¶ 8. In this case, defendant invokes Rule 14(b)(1)(A) and claims that the offenses were joined solely because they are of similar character. In that circumstance, he argues, he had a right to severance of the offenses. He made no argument in the trial court, and similarly makes no argument here, that severance was necessary to promote a fair determination of his guilt pursuant to Rule 14(b)(1)(B)(i).

¶ 9. Although the trial court did not use the precise language of Rule 8, it appears that the court concluded that the offenses involved a "series of acts connected together." Thus, we analyze the case under that ground for joinder. The question is one of law, and we review it de novo. See *State v. Amidon*, 2008 VT 122, ¶ 16, 185 Vt. 1, 967 A.2d 1126 ("The interpretation of procedural rules is a question of law which we review de novo.").

¶ 10. We addressed this ground for joining offenses in *State v. Beshaw*, 136 Vt. 311, 313, 388 A.2d 381, 382 (1978), where the defendant was charged with multiple offenses arising out of a disturbance in the prison in which he was incarcerated. We explained that the offenses were properly joined because they "derive from a single happening, and occurred in one geographical location and within a restricted and uninterrupted time sequence." *Id.*

¶ 11. We have also addressed what constitutes offenses joined because they are "of the same or similar character." In *State v. Carter*, we characterized offenses joined under this provision as "random events of the same or similar character." 156 Vt. 437, 440-41, 593 A.2d 88, 91 (1991). In *State v. Johnson*, we noted that they are "normally unrelated crimes that 'involve different times, separate locations, and distinct sets of witnesses and victims.'" 158 Vt. 344, 350, 612 A.2d 1114, 1117 (1992) (quoting 2 W. LaFave & J. Israel, Criminal Procedure § 17.1(b), at 355 (1984)).

¶ 12. Despite our precedents, defendant argues that joinder for a series of acts connected together is intended to be a limited ground. Both Criminal Rules 8 and 14 are based on the 1968 approved draft of the American Bar Association (ABA) Minimum Standards Relating to Joinder and Severance. See Reporter's Notes, V.R.Cr.P. 8, 14. Relying on the commentary to these standards, defendant argues that when no scheme or plan is found, Rule 8(a)(2) allows for joinder only in cases where "one offense is committed to aid in accomplishing another." ABA Comm. On the Criminal Trial, Standards Relating to Joinder and Severance 12 (Approved Draft 1968) [hereinafter ABA Standards]. Defendant urges that we follow the Michigan Supreme Court decision in *People v. Tobey*, 257 N.W.2d 537, 542 (Mich. 1977), which relied on the commentary to interpret the ABA Standards as expressing only a limited ground for joinder.

¶ 13. We do not find the *Tobey* limitation supported by either the language of the rule itself or by the ABA commentary. The commentary actually lists several examples of when joinder is allowed, including not only the above-quoted situation but also for "offenses within a close time-space sequence." ABA Standards, *supra*, at 12. This latter description is more consistent with the language of the rule itself, which contains no words suggesting that the series of connected acts have to be related in a particular way.

¶ 14. We are more persuaded by decisions from other states that have adopted joinder and severance rules using language identical to that in the Vermont rule. For example, in *Gillie v. State*, 808 S.W.2d 320, 324 (Ark. 1991), the Arkansas Supreme Court explained that offenses are based on a series of acts connected together if they occurred "close together in time and space." In *State v. Jatta*, No. 59099-5-I, 2008 WL 555948, at *2 (Wash. Ct. App. Mar. 3, 2008), a case involving incidents of domestic violence three months apart and joinder language identical to that in our rule, the court held that the offenses were sufficiently connected since they involved the same victim and were "related in time."

¶ 15. A common theme in the cases is whether evidence in the trial of the joined offenses would be admissible in the trial of each offense if the offenses were severed. See *Simmons v. State*, 646 S.E.2d 55, 58 (Ga. 2007) ("[W]here evidence of one

charge would be admissible in the trial of another, a trial court does not abuse its discretion by denying a motion for severance."). Thus, in commentary summarizing each of the grounds for joinder, the ABA Standards note:

> Joint prosecution of related offenses, as described above, does not place the defendant at a disadvantage in terms of the evidence which may be admitted. Even if these offenses were tried seriatim, evidence of all the offenses would be admissible in each prosecution under the other crimes test.

ABA Standards, *supra*, at 13.

¶ 16. The present case arises in a context, domestic violence, where we have generally allowed evidence of other noncharged acts of domestic violence to be admitted to explain the circumstances of the relationship between the parties. See *State v. Williams*, 2010 VT 77, ¶¶ 13-16, 188 Vt. 405, 9 A.3d 315; *State v. Sanders*, 168 Vt. 60, 62, 716 A.2d 11, 13 (1998). As we noted in *Williams*, this evidence may be probative "to explain the dynamic of the parties' relationship and complainant's conduct both before and after the assault." 2010 VT 77, ¶ 16. Although defendant argues to the contrary, if there had been separate trials, the evidence of the other assault might have been admissible in each, and, in that case, the joinder of the trials would not have put before the jury evidence that would have been absent without the joinder.

¶ 17. In this case, the two charged assaults involve the same complainant and the same location. They were relatively close in time — less than twelve hours apart. They involved an ongoing conflict over the use of the one car that defendant and complainant shared. After the initial dispute and violence, the complainant decided to leave the marriage, which led to the second attack. We hold that the offenses were part of a series of acts, within the meaning of V.R.Cr.P. 8(a)(2). We find no error in the denial of defendant's motion to sever the assault counts.

¶ 18. We next turn to defendant's claim that the jury instruction regarding excited utterances was improper. The court admitted the complainant's statements to the employee of A&B Beverage that she had been attacked by her husband and needed to call the police. The statements were admitted as excited utterances, an

exception to the hearsay rule pursuant to V.R.E. 803(2). In addition to admitting the evidence, the court took the unusual step of instructing the jury on the excited utterance doctrine:

> You have heard testimony in this case that on August 8, 2009, a witness or witnesses made statements to some civilians and police officers. The court has admitted the witnesses' statements because they are what are known in the law as "excited utterances."

> When the court allows the introduction of excited utterance testimony, it is because there is some evidence that a witness was under stress when the statements were made. Under our law, when there is evidence that a person was upset or excited when statements were made, those statements may be considered by you. They are what we call "admissible evidence." This is not to say that the law requires you to accept all such statements as being credible, but you may consider them because the law understands that such statements may not be the product of reflection or thought.

> I instruct you that a witness' excited utterances are to be treated equally with all of the other evidence presented in the case. It is for you to determine the credibility of each one of those "excited utterance" statements. You may decide to believe all of those statements, to believe some of those statements and to reject others, or you may decide to reject all of them.

Defendant objected to these instructions when they were proposed, particularly focusing on the last sentence of the second paragraph and its reference to the statements not being the product of reflection or thought. As drafted at the time of the objection, this sentence said that "the law understands that such statements are unlikely to be the product of reflection or thought." The trial judge diluted that sentence to the version above.

■ ¶ 19. When reviewing jury instructions, we will examine the instructions as a whole in order to determine if they were misleading or inadequate. *State v. Shabazz*, 169 Vt. 448, 450, 739 A.2d 666, 667 (1999). We will assign error if the instructions undermine our confidence in the verdict. *State v. Brooks*, 163 Vt. 245, 250, 658 A.2d 22, 26 (1995).

¶ 20. Rulings on the admissibility of evidence are made by the court and not by the jury. See V.R.E. 104(a). Thus, there was no reason for the court to give this instruction. We recognize that it is desirable for the court to instruct the jury on how to approach and weigh the evidence. In this vein, the court gave instructions on credibility of witnesses, credibility of law enforcement officers, circumstantial evidence, prior inconsistent statements, and prior statements made by the defendant. Apparently, the court saw its excited utterance instruction as similar to the others, although it explained the grounds for admissibility when the other instructions did not.

¶ 21. We recognize that there are circumstances where the court may have to explain the admission of particular evidence to the jury for clarification or to guard against prejudice. See *Ulm v. Ford Motor Co.*, 170 Vt. 281, 291, 750 A.2d 981, 990 (2000) (allowing curative instruction on excited utterances because lawyer had argued in closing that excited utterances were to be given special consideration). There are no special circumstances here, however. We agree with defendant that because the court singled out this evidence and explained its admissibility, there was some danger that the jury would give it undue weight. For this reason, we do not follow the unpublished Tennessee decision cited by the State, *State v. Ward*, No. E2004-01665-CCA-R3-CD, 2005 WL 3590992, at *9 (Tenn. Crim. App. 2005), holding that the trial court acted within its discretion in giving an instruction to explain why excited utterance testimony was admitted. In our view, the court should not have given the instruction.

¶ 22. We disagree with defendant, however, that in this case the jury instruction on excited utterances improperly bolstered the credibility of the complainant. Assessment of witness credibility is a task left solely to the jury, and instructions should not evaluate the relative weight of testimony or the credibility of witnesses. See *State v. Martel*, 122 Vt. 491, 494, 177 A.2d 236, 239 (1962); *Noyes v. Parker*, 64 Vt. 379, 382-83, 24 A. 12, 13 (1892). The instruction given in this case did not violate this principle. Although the original language might have suggested special weight for an excited utterance, the instruction ultimately given to the jury was more benign. The final instruction merely stated that if there was "some evidence that a witness was under stress . . . such statements may not be the product of reflection or thought."

It went on to emphasize that the jury must determine credibility, treating excited utterances equally with all other evidence.

¶ 23. Furthermore, the instruction was not an incorrect statement of Vermont law. While the trial court's decision to give an instruction explaining the excited utterance hearsay exception was unusual, the instruction was not inaccurate or misleading. See V.R.E. 803(2); *State v. Muscari*, 174 Vt. 101, 111, 807 A.2d 407, 415 (2002) (upholding instruction that was accurate and served cautionary purpose). Indeed, the instruction in this case is essentially the same as that given in *Ulm*, and we held in that case that it was accurate. See *Ulm*, 170 Vt. at 291, 750 A.2d at 989-90.

¶ 24. The instruction on excited utterances does not undermine our confidence in the verdict. We can say beyond a reasonable doubt that the verdict would have been the same had the instruction not been given. Therefore, its inclusion was harmless. See *State v. Williams*, 2010 VT 83, ¶ 35, 188 Vt. 413, 8 A.3d 1053 ("Error is harmless if we can say beyond a reasonable doubt that the jury would have convicted absent the error.").

¶ 25. Defendant finally claims that aspects of the prosecutor's closing arguments were inflammatory and unduly prejudicial. Defendant failed to object to the prosecutor's argument at trial, so the claim will be reviewed for plain error. See V.R.Cr.P. 52(b). In these circumstances, defendant faces a very limited standard of review. "Plain error can be found only in exceptional circumstances where a failure to recognize error would result in a miscarriage of justice, or where there is glaring error so grave and serious that it strikes at the very heart of the defendant's constitutional rights." *State v. Hoadley*, 147 Vt. 49, 53, 512 A.2d 879, 881 (1986). In challenges to the prosecutor's closing argument, we have found reversible error absent an objection only if the argument is " 'manifestly and egregiously improper.' " *State v. Ayers*, 148 Vt. 421, 426, 535 A.2d 330, 333 (1987) (quoting *State v. Bailey*, 144 Vt. 86, 100, 475 A.2d 1045, 1053 (1984)). In making this judgment, we have considered a number of factors:

> the blatancy of the challenged statement, the impact on the theory of the defense, the persistence and frequency of the statement, the opportunity for the court to minimize potential prejudice, the strength of the evidence supporting the relevance of the statement, the overall strength of the State's case, the apparent motivation for

making the remarks, and whether the statement was inflammatory and attacked defendant's character.

*State v. Hemond,* 2005 VT 12, ¶ 12, 178 Vt. 470, 868 A.2d 734 (mem.) (citations omitted).

¶ 26. Defendant alleges that the prosecutor made improper arguments in three respects. First, he called defendant a liar in two instances and argued that defendant called others liars. As to the latter statement, the prosecutor was referring to the testimony of a police officer that defendant called the persons who had been at A&B Beverage on the morning of August 8 liars. In his closing argument, the prosecutor stated that defendant lied about how he confronted the police officer. In his opening statement, the prosecutor argued that he could not determine why defendant was saying that the witnesses lied about his presence at A&B Beverage "when he was [lying] patently."

¶ 27. Second, he claims that the prosecutor was appealing to the jurors' sympathies when the prosecutor referred to the complainant as having been brutalized and expressed in the opening statement that he could not convey the complainant's passion, pain, and hysteria when she entered A&B Beverage on August 8. Finally, defendant claims that the prosecutor personally attacked defendant's character when he argued in rebuttal that defendant was "contemptuous of the law" for driving with a suspended license and "contemptuous of life" for his violence to the complainant.

¶ 28. We have been critical of prosecutor arguments that label defendant as a liar because of the special weight the jury may place on the opinion of the prosecutor. See *State v. Francis,* 151 Vt. 296, 299-300, 561 A.2d 392, 394 (1989). But we have rarely reversed a criminal conviction because of such statements, particularly where there has been no objection. Here, the prosecutor's statement that defendant was lying about the details of his meeting with the police officers did not involve events central to the case. The statement that defendant was lying about whether he went to A&B Beverage was central to his defense to the DLS charge, but was closer to fair comment because defendant had told an officer that the independent observers at A&B Beverage were liars. This is a point on which the State's case was strongest because it was based on the testimony of neutral witnesses. The court gave a standard instruction to the jury that statements

made by the lawyers are not evidence and should not be considered as such. We conclude that the circumstances of the prosecutor's statements in this case are close to those in *State v. Kinney*, 2011 VT 74, ¶¶ 10-12, 190 Vt. 195, 27 A.3d 348, where the prosecutor's statement that defendant lied to the police did not amount to plain error.

¶ 29. We cannot find that the second category of statements was manifestly and egregiously improper. The prosecutor was entitled to comment on the evidence. The evidence supported the State's claim that the complainant entered A&B Beverage in a hysterical and frightened condition, experiencing pain. It was fair for the prosecutor to focus on her actions and mental state. The prosecutor's characterization that the complainant had been brutalized was also within the range of the evidence.

¶ 30. Defendant has focused particularly on the rebuttal comments that defendant was contemptuous of the law and of life. Again, we do not find that the statements rose to the level of plain error. Certainly, defendant's driving to A&B Beverage with a suspended license, if believed by the jury, showed an intentional disregard for his legal responsibilities that the jury could consider. According to the jury instructions, the jury had to find that defendant acted recklessly to convict him of the assault crimes. This included finding that defendant's conduct was a "gross deviation from how a law-abiding person would have acted in the same situation" and that defendant "consciously ignored a known, substantial and unjustifiable risk that his conduct would cause injury to [the complainant's] face and/or head." While the labeling of defendant's actions as contemptuous went beyond what the State had to prove, they were comments on defendant's conduct with respect to the charges, rather than general attacks on his character. Although the prosecutor must be fair in his comments, he can be harsh in describing defendant's conduct. We do not find the choice of words to be manifestly and egregiously improper.

*Affirmed.*