NOTICE:  This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports.  Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2024 VT 6

No. 23-AP-106

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Bennington Unit, |
| | Criminal Division |
| | |
| Denzel Lafayette | November Term, 2023 |

Cortland Corsones, J.

Evan P. Meenan,[1] Deputy State's Attorney, Montpelier, for Plaintiff-Appellee.

Allison N. Fulcher, Martin, Delaney & Ricci Law Group, Barre, for Defendant-Appellant.

PRESENT:  Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1.    **CARROLL, J.**   Defendant Denzel Lafayette was convicted by a jury of sexual assault and carrying a firearm while committing a felony.  In this appeal, he argues that the evidence presented by the State was insufficient to support his convictions and the trial court committed plain error by not instructing the jury that it had to find that the carrying of the gun was related to the commission of the sexual assault.  Defendant also challenges three probation conditions imposed by the trial court.  We affirm the convictions, but remand for the trial court to

---

[1]  Alexander Burke, Bennington County Deputy State's Attorney, was on the brief.  Evan P. Meenan substituted as counsel.

strike part of one probation condition and to make findings, modify, or strike portions of the other two challenged conditions.

¶ 2.     In September 2020, defendant was charged with sexual assault, sexual exploitation by luring a child, and carrying a weapon while committing a felony.[2]  A two-day trial was held in July 2022.

¶ 3.     The State presented the following evidence at trial.  In August 2020, a Bennington police officer met with the complainant, K.V., and her parents at the Bennington police department.  They told the officer that a twenty-two-year-old man had climbed through the window of K.V.'s father's residence and had sexual intercourse with K.V.  After obtaining written statements from K.V. and her parents, the officer forwarded the information to a detective.

¶ 4.     A few days later, the detective and an employee of the Department for Children and Families interviewed K.V.  They learned that K.V. had been communicating with a man later identified to be defendant on Facebook.  The detective obtained access to K.V.'s Facebook account.  He found messages sent between K.V. and defendant and a video sent to K.V. in which defendant, wearing a blue Champion hooded sweatshirt, filmed himself pulling a gun out of his waistband.

¶ 5.     In the Facebook messages, K.V. and defendant discussed meeting at her home one evening in August of 2020.  K.V. expressed fear that she would get caught and asked defendant to come a different night.  Defendant stated, "We not fucking imma just slide through."  In response, K.V. stated, "but I wanna fuck."  They exchanged several more messages in which K.V. asked defendant not to come to her house and then apparently changed her mind.

¶ 6.     A neighbor of K.V.'s father testified that one night in mid-August of 2020, he went outside his trailer for a cigarette at around 2:30 or 3:00 in the morning and saw an unfamiliar

---

[2]  A fourth count of possession of child pornography was dismissed by the State prior to trial.

2

vehicle. The neighbor reported this to police, but they did not find the vehicle. The neighbor stayed outside his trailer and heard noises that sounded like a creaking window. He then saw a man wearing Champion-brand clothing run behind a car in the driveway near K.V.'s father's trailer. He called the police again, and they apprehended the man, who told them he was waiting for a ride. The man continued to walk around the neighborhood, at one point crossing into the neighbor's front yard. The neighbor told the man to leave the trailer park. The man told the neighbor that he was "hot," which the neighbor interpreted to mean that he might have a gun. The man then walked away and the neighbor did not see him again.

¶ 7. K.V. testified that she was born in August 2005. In August 2020, shortly after she turned fifteen years old, she was communicating with an individual later identified to be defendant on Facebook, with whom she connected through mutual friends on the platform. They began chatting every day, and at some point, the conversation turned sexual. K.V. told defendant her name and age. He told her that he lived in North Adams, Massachusetts. They began to make a plan for him to come visit her in Vermont. They settled on a date and agreed that defendant would arrive at 2:30 in the morning.

¶ 8. On the night in question, K.V. was staying in her room at her grandmother's trailer, where she, her father, and her siblings lived. Her father and grandmother had gone to bed. Defendant came to her window and asked her to hold his gun. He showed her the gun, which she described as a "silver, blackish, like, revolver." She refused to hold it. He then climbed in through her window. They sat on her bed and talked for about five minutes. Defendant started kissing her. Defendant was wearing a blue Champion sweatsuit. He took her pants off, and she got on top of him. K.V. testified that they kissed some more, then they "had sex." The prosecutor asked, "did he put his penis inside your vagina?" K.V. stated, "Yes." They stopped when they heard voices outside her window. Defendant "started freaking out," and K.V. told him to hide in her closet. A couple of minutes later, she saw flashlights through the window. She did not know who was

3

outside. After the voices went away, defendant got out of her closet and returned to the bed. K.V. told him that he needed to leave, and he refused. She told him that she would scream if he didn't leave, after which he left. K.V. testified that the gun defendant displayed in the Facebook video was the same gun that he brought to her home.

¶ 9. After the State rested, defense counsel moved for judgment of acquittal on all three counts. The court granted the motion as to the luring count, but denied acquittal on the counts of sexual assault and carrying a weapon while committing a felony. Defendant did not testify or present any witnesses. The jury found defendant guilty of both remaining counts. At a sentencing hearing in February 2023, the court imposed a sentence for the sexual assault conviction of five years to life, all suspended except for five years, and a concurrent sentence of one-to-four years to serve for the carrying-a-weapon conviction. This appeal followed.

## I. Sufficiency of the Evidence

¶ 10. Defendant first argues that the trial court erred in denying his motion for judgment of acquittal because the evidence presented by the State was insufficient to support either of his convictions. We review the trial court's denial of a motion for judgment of acquittal de novo. State v. Hale, 2021 VT 18, ¶ 8, 214 Vt. 296, 256 A.3d 595. Our task is to determine whether the evidence, viewed in the light most favorable to the State and without considering any modifying evidence, "is sufficient to fairly and reasonably convince a trier of fact that the defendant is guilty beyond a reasonable doubt." State v. Stephens, 2020 VT 87, ¶ 10, 213 Vt. 253, 250 A.3d 601 (quotation omitted). "A judgment of acquittal is proper only if the prosecution has failed to put forth any evidence to substantiate a jury verdict." State v. Johnson, 2013 VT 116, ¶ 26, 195 Vt. 498, 509, 90 A.3d 874. When reviewing the record, we are mindful that "[c]redibility questions raised by the evidence at trial are entirely within the province of the jury." State v. Hammond, 2012 VT 48, ¶ 14, 192 Vt. 48, 54 A.3d 151 (quotations omitted).

4

## A. Sexual Assault

¶ 11. To prove the sexual assault charge, the State had to present evidence beyond a reasonable doubt that defendant engaged in a sexual act with K.V. without her consent. 13 V.S.A. § 3252(a)(1). It is undisputed that K.V. was unable to consent to sex because she was under the age of sixteen. See State v. Deyo, 2006 VT 120, ¶ 23, 181 Vt. 89, 915 A.2d 249 (interpreting sexual assault statute to mean that "apart from an exceedingly narrow exception for married people under age sixteen, minors cannot consent to sexual acts in Vermont"). Accordingly, the issue before us is whether the State proved that defendant engaged in a sexual act with K.V. A "sexual act" is defined by the sexual assault statute as "contact between the penis and the vulva, the penis and the anus, the mouth and the penis, the mouth and the vulva, or any intrusion, however slight, by any part of a person's body or any object into the genital or anal opening of another." 13 V.S.A. § 3251(1).

¶ 12. K.V.'s testimony regarding this element, though brief, was sufficient for the jury to find beyond a reasonable doubt that defendant engaged in a sexual act with her. She testified that she and defendant "had sex." When asked by the prosecutor whether defendant put his penis in her vagina, she replied, "yes." She also texted defendant prior to their encounter, "but I wanna fuck." The police detective who investigated the case testified that K.V. identified defendant as the individual who "sexually assaulted" her. Defendant also told K.V.'s mother that he was in the wrong for "having sex with" K.V. These statements were sufficient for the jury to infer that penis-to-vulva contact occurred and to satisfy that element of the charge. See State v. Desautels, 2006 VT 84, ¶ 8, 180 Vt. 189, 908 A.2d 463 (holding that victim's testimony that she and defendant "had sex" or "had sexual intercourse" and that defendant "raped" her, and that sex meant that defendant's penis went inside her, were sufficient to satisfy sexual-act element of sexual assault charge). The trial court therefore did not err in denying defendant's motion for judgment of acquittal on the sexual assault charge.

## B. Carrying a Weapon While Committing a Felony

¶ 13.    Defendant also challenges the sufficiency of the evidence to support his conviction for carrying a weapon while committing a felony, arguing that there was no evidence of a relationship between the carrying of the gun and the sexual assault.  Section 4005 of Title 13 makes it a crime for a person to "carr[y] a dangerous or deadly weapon, openly or concealed, while committing a felony."  In <u>State v. Carter</u>, our principal decision interpreting § 4005, we explained that the purpose of the statute was to impose more severe penalties when the carrying of a weapon "facilitated, or had the potential of facilitating, the commission of a felony."  156 Vt. 437, 442, 593 A.2d 88, 91 (1991) (quotation omitted).  The statute was not intended "to penalize one who happens to have a gun in his possession when he commits an entirely unrelated offense."  <u>Id</u>. (quoting <u>United States v. Stewart</u>, 779 F.2d 538, 540 (9th Cir.1985), cert. denied, 484 U.S. 867 (1987), overruled in part on other grounds by <u>United States v. Hernandez</u>, 80 F.3d 1253, 1257 (9th Cir. 1996)).  We therefore ruled that "§ 4005 requires a relationship between the carrying of a weapon and the underlying felony."  <u>Id</u>. at 437, 593 A.2d at 92.  We emphasized, however, that the statute does not require the weapon to be "used or brandished."  <u>Id</u>.  Rather, "[i]t is enough that the weapon had the potential of facilitating the commission of the underlying felony."  <u>Id</u>.

¶ 14.    In <u>Carter</u>, the State presented evidence that the defendant had a loaded gun in his pocket when he assisted a twelve-year-old boy in entering a trailer and stealing a jug of coins.  We held that this evidence was sufficient to support a conviction under § 4005 even though the defendant did not use or display the weapon while committing the burglary, reasoning, "[t]hat a weapon has the potential of facilitating the felony of burglary is patent."  <u>Id</u>.

¶ 15.    We similarly conclude here that defendant's carrying of the firearm had the obvious potential to facilitate the felony of sexual assault.  As the Ninth Circuit explained in construing the analogous federal criminal statute, 18 U.S.C. § 924(c):

6

> If the firearm is within the possession or control of a person who commits an underlying crime as defined by the statute, and the circumstances of the case show that the firearm facilitated or had a role in the crime, such as emboldening an actor who had the opportunity or ability to display or discharge the weapon to protect himself or intimidate others, whether or not such display or discharge in fact occurred, then there is a violation of the statute.

Stewart, 779 F.2d at 540. Applying this principle, the United States Court of Appeals for the Fifth Circuit has affirmed a conviction for carrying a firearm while committing sexual assault where the evidence showed that the defendant, an on-duty police officer, placed his gunbelt on the roof of a car while sexually assaulting the victim in the back seat. United States v. Contreras, 950 F.2d 232, 235, 241 (5th Cir. 1991). The appellate court explained that the jury could reasonably have concluded that the defendant "was emboldened by his possession of a firearm to assault [the victim], that he displayed the gun in order to intimidate her, and that he had the opportunity and ability to discharge the gun during the entire incident." Id. at 242. The fact that the defendant did not actually threaten the victim with the gun did not preclude a conviction. Id.; see also United States v. Guidry, 456 F.3d 493, 509 (5th Cir. 2006) (affirming police officer's conviction for carrying firearm "during and in relation to" sexual assault of victim even though officer did not take gun out of belt and actually threaten victim, because jury could reasonably conclude that defendant was emboldened by possession of gun and gun was threat to and intimidated victim).

¶ 16. Similarly, the jury in this case could reasonably conclude that defendant was emboldened by his possession of the gun to carry out the assault, and that he displayed the firearm to intimidate K.V. into acceding to his desire for sex. The fact that defendant did not actually use the gun, or threaten to harm K.V. with it, does not mean that the weapon did not have significant potential to help him achieve his aims. See Contreras, 950 F.2d at 242; Guidry, 456 U.S. at 509; see also United States v. Sturtevant, 62 F.3d 33, 34 (1st Cir. 1995) (explaining that connection between assault and defendant's carrying of gun "seems to us no less close than the connection

7

between a drug hideout and gun. In each instance, the weapon provides an added sense of security and has a substantial potential for use in the course of the particular crime in question").

¶ 17. Defendant argues that his conviction cannot stand because there was no evidence that the gun was loaded or that he used it to intimidate K.V. These arguments are unpersuasive. While evidence that defendant loaded the gun could be probative of his purpose in bringing it, the lack of evidence that it was loaded does not defeat a conviction. The statute merely requires proof that the defendant carried a dangerous or deadly weapon—it does not require proof that the weapon was loaded. See Contreras, 950 F.2d at 241 (explaining that "[t]he fact that a weapon is 'unloaded' or 'inoperative' does not insulate the defendant" from conviction under equivalent federal statute prohibiting carrying firearm while committing crime of violence); see also McLaughlin v. United States, 476 U.S. 16, 17-18 (1986) (holding that unloaded gun is "dangerous weapon" because "the display of a gun instills fear in the average citizen; as a consequence, it creates an immediate danger that a violent response will ensue"); State v. Longley, 2007 VT 101, ¶ 8, 182 Vt. 452, 939 A.2d 1028 (concluding that firearm need not be loaded or operable to be a "deadly weapon" for purposes of aggravated domestic assault).[3] And, viewed in the light most favorable to the State, the evidence that defendant showed K.V. the gun before the assault could be reasonably interpreted by the jury as an effort by defendant to intimidate K.V. and ensure her compliance. See Contreras, 950 F.2d at 242; State v. Cameron, 2016 VT 134, ¶ 5, 204 Vt. 52, 163 A.3d 545 (stating that when reviewing motion for judgment of acquittal, this Court views evidence in light most favorable to State).

¶ 18. We also disagree with defendant's argument that there was no evidence that defendant was "carrying" the gun while he committed the sexual assault. The term "carrying"

---

[3] Defendant did not object to the trial court's jury instruction that "[y]ou may find that a gun is a dangerous weapon, whether or not the gun is loaded or capable of being fired."

8

does not require the gun to be on the defendant's person at all times during the commission of the felony; constructive possession can be sufficient.  See Muscarello v. United States, 524 U.S. 125, 126 (1998) (concluding under equivalent federal statute that carrying a firearm is not limited to carrying of firearms on the person; it also includes knowing possession and conveyance of firearm in locked glove compartment of car); Contreras, 950 F.2d at 241 (affirming conviction for carrying firearm during sexual assault where gun was in reach of defendant during assault); see also United States v. Critton, 43 F.3d 1089, 1096 (6th Cir. 1995) (explaining that firearms are "used" or "carried" to commit felony of drug trafficking within definition of equivalent federal statute "so long as it reasonably appears that the weapons were in a defendant's actual or constructive possession and were used to protect the drugs or facilitate the transaction").  The record here showed that when defendant came to K.V.'s window, he asked her to hold his gun and showed her the gun.  The gun appeared to be the same gun that defendant pulled from his waistband in the Facebook video, suggesting that defendant routinely carried it on his person.  Although there was no testimony regarding the location of the gun during and after the sexual act, no weapon was found at or around the residence after defendant departed.  The totality of the evidence supports a rational conclusion that defendant retained control of the gun throughout the assault and took it with him when he left.  See, e.g., United States v. Pate, 932 F.2d 736, 737-38 (8th Cir. 1991) (affirming conviction for carrying firearm in relation to bank robbery where defendant had shotgun in getaway car, because escape was part of robbery).

¶ 19.  We agree that a conviction under § 4005 would not be sustainable where the evidence showed that the possession of a deadly weapon was completely unrelated to the commission of the underlying crime.  See, e.g., United States v. Robertson, 706 F.2d 253, 256 (8th Cir. 1983) (reversing conviction for carrying firearm in commission of felony where no evidence that defendant had gun during period when he unlawfully attempted to collect usurious debt from victim; evidence merely showed that defendant kept gun in his office desk during period in

9

question); State v. Ring, 447 N.W.2d 908, 911 (Neb. 1989) (reversing conviction for use or possession of deadly weapon to commit felony of vehicular homicide where defendant drove while intoxicated and had fatal collision with victim, because no evidence that defendant was using car for purpose of killing victim). However, "[t]his is not the case of an accountant who, while forging checks, happens to have a gun in the desk drawer." Sturtevant, 62 F.3d at 34-35. The gun had the obvious potential to further the sexual assault, and the totality of the evidence, viewed in the State's favor, supports a reasonable inference that defendant had the gun in his actual or constructive possession during the assault. We therefore conclude that the trial court did not err in denying defendant's motion for judgment of acquittal on the carrying-a-weapon count.

## II. Jury Instruction

¶ 20.    Defendant further claims that his carrying-a-weapon conviction must be vacated because the court did not instruct the jury that it had to find a relationship between the carrying of the gun and the commission of the sexual assault. Defendant did not request such an instruction or object to the trial court's failure to include it. We therefore review for plain error, meaning error "which, unrecognized by this Court, would result in a miscarriage of justice." State v. Lambert, 2003 VT 28, ¶ 14, 175 Vt. 275, 830 A.2d 9. An alleged error in jury instructions "must not only affect substantial rights, but also have an unfair prejudicial impact on the jury's deliberations." State v. Carpenter, 170 Vt. 371, 375, 749 A.2d 1137, 1140 (2000).

¶ 21.    In Carter, we rejected the defendant's claim that the trial court committed plain error in failing to instruct the jury that it had to find a relationship between his carrying of a gun and the commission of the burglary. 156 Vt. at 443, 593 A.2d at 92. We concluded that the court's instruction that the jury had to find that the defendant carried the weapon while the burglary was committed, coupled with the obvious relationship between the carrying of the weapon and the commission of the burglary, was "enough to overcome any fear of a miscarriage of justice." Id.

¶ 22.   Defendant's claim in this case fails for the same reason.  The trial court instructed the jury that it had to find that defendant "carried the dangerous or deadly weapon while committing the crime, as delineated in Count I [sexual assault]."  It further explained that if the jury found defendant did not commit sexual assault as charged in Count I, then it necessarily had to find him not guilty of the carrying-a-weapon count.  As discussed above, the relationship between the carrying of the weapon and the commission of the sexual assault was self-evident.  Viewing the totality of the evidence and instructions, we cannot conclude that the alleged error resulted in a miscarriage of justice here.  See id.

### III.  Probation Conditions

¶ 23.   Finally, defendant argues that portions of three of the probation conditions imposed by the trial court must be stricken because they are overbroad and unduly restrictive.  Defendant did not object to these conditions at the sentencing hearing but argues on appeal that their imposition was plain error.  See State v. Putnam, 2015 VT 113, ¶ 69, 200 Vt. 257, 130 A.3d 836 (reviewing challenge to probation condition not raised in trial court for plain error).

¶ 24.   The first challenged condition, condition 112, prohibits defendant from contacting males or females under the age of eighteen unless approved in advance by his probation officer.  Defendant argues that the provision concerning males is erroneous because his conviction did not involve a minor male.  The record of the sentencing hearing reflects that the trial court's intent was to impose the conditions recommended by the presentence investigation report, which included a condition prohibiting contact with minor females only.  The State concedes that the reference to males appears to be a clerical error.  We accordingly remand for the trial court to strike that portion of condition 112.  See State v. Lumumba, 2018 VT 40, ¶ 21, 207 Vt. 254, 187 A.3d 353 (striking probation conditions based on State's concession that they were unsupported or inapplicable to defendant).

¶ 25. The second and third conditions challenged by defendant are condition 13(g), which requires him to engage in screening and, if recommended, counseling or treatment for substance abuse, mental health, "or any programming deemed appropriate by your probation officer and to your probation officer's satisfaction"; and condition 34, which requires defendant to attend and participate in "any sex offender counseling, or any programming deemed appropriate by your probation officer and to your probation officer's satisfaction." Defendant does not challenge the portions of these conditions requiring him to undergo screening and treatment for substance abuse and mental health treatment or sex offender counseling. However, defendant argues, and the State concedes, that the clause in each condition giving the probation officer discretion to require defendant to participate in "any programming" is an overbroad delegation of sentencing authority that is not supported by any findings by the trial court. See Putnam, 2015 VT 113, ¶¶ 70-73 (holding that imposition of probation condition requiring defendant to attend any counseling or training program designated by probation officer was plain error because it was overbroad delegation of authority not supported by findings). Accordingly, we remand for the trial court to make findings to support the challenged portions of these conditions, modify the conditions to provide limits on the probation officer's discretion, or strike the challenged clauses. See id.

We affirm defendant's convictions and remand for the trial court to strike that portion of condition 112 relating to males and to make findings, modify, or strike the challenged portions of conditions 13(g) and 34.

FOR THE COURT:

_____

Associate Justice