NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2015 VT 113

No. 2014-020

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Windsor Unit, |
| | Criminal Division |
| | |
| Billy Joe Putnam | September Term, 2014 |

Karen R. Carroll, J.

Glenn Barnes, Windsor County Deputy State's Attorney, White River Junction, for
  Plaintiff-Appellee.

Matthew F. Valerio, Defender General, and Joshua S. O'Hara, Appellate Defender, Montpelier,
  for Defendant-Appellant.

PRESENT: Reiber, C.J., Dooley, Skoglund and Robinson, JJ., and Maley, Supr. J.,
         Specially Assigned

¶ 1.    **ROBINSON, J.**    This case calls upon us to consider the significance of the so-called "standard conditions" of probation. Defendant was convicted by jury of disorderly conduct and grossly negligent operation. He argues that the evidence was insufficient to support his grossly-negligent-operation conviction. Defendant also challenges various conditions of probation. We affirm defendant's conviction, but strike several probation conditions, and remand.

¶ 2.    The charges here stem from a March 2013 incident involving defendant and his neighbor. The following evidence was presented at trial. The neighbor testified that he lives less than a mile away from defendant on a narrow dirt road. Defendant's house is on an S-shaped

curve with a blind rise directly after it. On the afternoon in question, the neighbor was driving home on the dirt road. He was traveling approximately ten miles per hour and playing his music loudly with the windows rolled down. After passing defendant's house, the neighbor noticed a white car quickly coming up behind him. The car passed the neighbor on the left, pulled back into the middle of the road, and braked, turning sideways and blocking the road. During this maneuver, the white car slid ten or fifteen feet and left four sets of tire marks across the road.

¶ 3. Defendant got out of the white car and began screaming and swearing at the neighbor. He threatened the neighbor and said he was tired of the neighbor's loud music. Another person also witnessed defendant yelling. The neighbor took several pictures of the scene as he sat in his car, one of which was admitted into evidence. The picture showed tire marks across the road and defendant's car stopped in the middle of the road. The neighbor testified that had he not braked, he would have hit defendant's car.

¶ 4. A police detective who took statements from defendant and the neighbor also testified. Defendant told the detective that the neighbor had been playing his music too loudly and that he had gone after the neighbor to stop the neighbor's car. The detective testified that the tire marks depicted in the neighbor's photograph were consistent with someone slamming on their brakes, possibly pulling on the emergency brake, and coming around sideways. The detective stated that the tire marks and the position of defendant's car indicated that someone had either started or stopped unsafely.

¶ 5. At the close of the State's case, defendant moved for judgment of acquittal on the grossly-negligent-operation charge, arguing that the State failed to show that his driving placed anyone at risk of harm. According to defendant, he had been able to pass the neighbor safely on the left, turn his car, and put it in the middle of the road, and the neighbor had been able to stop well in advance of hitting him. The court denied defendant's motion. Defendant did not present any evidence on his own behalf. The jury found defendant guilty, and defendant was sentenced

2

to two concurrent thirty-to-sixty-day sentences, all suspended, with two years of probation. We discuss the conditions of probation in more detail below. Defendant appealed.

## I. Grossly Negligent Operation

¶ 6. Defendant first challenges the court's denial of his motion for a judgment of acquittal. According to defendant, the State needed to show that he "exercised no care due to others in a situation where there is great potential for immediate danger." He argues that his conduct did not meet this standard. Defendant also asserts that the facts here are less egregious than other cases where we have upheld convictions for grossly negligent operation.

¶ 7. On review of the trial court's denial of defendant's motion for acquittal, "we must consider whether the evidence, taken in the light most favorable to the State and excluding the modifying evidence, is sufficient to fairly and reasonably support a finding of guilt beyond a reasonable doubt." State v. Devine, 168 Vt. 566, 566, 719 A.2d 861, 862 (1998) (mem.).

¶ 8. To establish defendant's guilt, the State needed to show that defendant operated his vehicle on a public highway in a grossly negligent way. 23 V.S.A. § 1091(b)(1). "The standard for a conviction" under § 1091(b) is "gross negligence, examining whether the person engaged in conduct which involved a gross deviation from the care that a reasonable person would have exercised in that situation." Id. § 1091(b)(2). The statute provides a heightened penalty if the grossly negligent operation results in "serious bodily injury . . . or death of any person other than the operator." Id. § 1091(b)(3). Negligent operation, by contrast, requires the State to prove only "ordinary negligence, examining whether the person breached a duty to exercise ordinary care." Id. § 1091(a)(2).

¶ 9. In distinguishing these two crimes, "we have said that gross negligence amounts to a failure to exercise even a slight degree of care, and that it requires more than an error in judgment, momentary inattention, or loss of presence of mind." State v. Valyou, 2006 VT 105, ¶ 5, 180 Vt. 627, 910 A.2d 922 (mem.) (quotation omitted). We have recognized the difficulty in defining "gross negligence" with any precision, and, accordingly, have concluded that "the

3

presence or absence of gross negligence turns upon the particular factual circumstances of each case, and therefore rests within the special province of the jury." Id. (quotation and brackets omitted). If "reasonable minds cannot differ," however, "the court can decide the question as a matter of law." State v. Free, 170 Vt. 605, 606, 749 A.2d 622, 624 (2000) (mem.).

¶ 10. We have not held, as defendant posits, that grossly negligent operation exists only when a driver exercises "no care" in a situation where "there is great potential for immediate danger." Defendant does not cite any cases in support of this proposition, but appears to rely on language from State v. Carlin, a grossly-negligent-operation case that involved a driver's momentary inattention to the roadway. 2010 VT 79, 188 Vt. 602, 9 A.3d 312 (mem.). We held in Carlin that there are circumstances under which a driver's momentary inattention to the roadway can be gross negligence, including where "that inattention occurs in a place where there is great potential for immediate danger." Id. ¶ 9. That is not the situation here.

¶ 11. In this case, the court instructed the jury, over the State's objection, that the State needed to show that defendant "disregarded a risk of injury or death" and that "the risk was such that, considering the nature and purpose of the defendant's conduct, and the circumstances known to him, the defendant's failure to perceive it was a gross deviation from the standard of care that a reasonable person would have exercised in the same situation." Defendant does not challenge this standard on appeal. Assuming without deciding that the jury instruction was correct and that the State needed to prove that defendant "disregarded a risk of injury or death," the State met its burden here.[1]

---

[1] The trial court based its jury instruction on Free, 170 Vt. at 606, 749 A.2d at 624, a case involving a charge of grossly negligent operation with death resulting. In Free, we recognized that gross negligence is defined by statute as "conduct which involved a gross deviation from the care that a reasonable person would have exercised in that situation." Id. (citing 23 V.S.A. § 1091(b)(2)). We observed that "[t]he Legislature adopted this language to implement our holding in State v. Beayon, 158 Vt. 133, 605 A.2d 527 (1992)." Id. We then discussed the holding of Beayon, which was what the trial court used for its jury instruction in the instant case.

¶ 12.   As described by the trial court, the evidence showed that defendant, seized by anger, chased his neighbor and passed him on a road that was barely as wide as defendant's car turned sideways. He then turned abruptly so that his car sat across the roadway, leaving four tire marks. Defendant stopped just in front of the neighbor, and the neighbor had to put on his brakes to avoid hitting defendant and defendant's car. The jury could reasonably conclude that this conduct put the neighbor at risk of injury, regardless of the neighbor's ability to stop in time to avoid a collision. We agree with the trial court that this was sufficient evidence for the jury to find that defendant's conduct grossly deviated from the standard of care that a reasonable driver would have exercised under similar circumstances.

¶ 13.   None of defendant's arguments persuade us otherwise. Defendant asserts that he was not grossly negligent because it was legal for him to pass the neighbor on the left, and even though he turned his car sideways and stopped abruptly in the middle of the road, the neighbor did not testify that he had to brake suddenly to avoid a dangerous collision. Defendant also notes

---

Beayon was a vehicular homicide case decided under a prior version of § 1091(c). At that time, the statute contained no express mens rea requirement. Under the old law, a person was subject to a fifteen-year prison term if he or she, while engaged in a traffic violation, caused the death of any person as a result of the violation. See Beayon, 158 Vt. at 134 n.2, 605 A.2d at 528 n.2 (quoting 23 V.S.A. § 1091(c) (1990)). We concluded that because § 1091(c) imposed the same penalty as Vermont's manslaughter statute, "a violation of 23 V.S.A. § 1091(c) require[d], at a minimum, a mens rea of criminal negligence." Id. at 135-36, 605 A.2d at 528.

Thus, in Beayon we held—under a prior version of the statute and in a case that resulted in someone's death—that the State must show: (1) that the defendant "disregarded a risk of death or injury," id. at 135, 605 A.2d at 528 (quotation omitted), and (2) that the risk was "of such a nature and degree that the failure to perceive it, considering the nature and purpose of [the defendant's] conduct and the circumstances known to [the defendant], involve[d] a gross deviation from the standard of care that a reasonable person would observe in the actor's situation." Id. (quotation and original alternations omitted). As we recognized in Free, "[i]t is this latter language upon which the Legislature seized in formulating the standard of negligence required for a § 1091(b) conviction." 170 Vt. at 606, 749 A.2d at 624 (quotation omitted and emphasis added).

The statute now contains a "standard for a conviction for grossly negligent operation." 23 V.S.A. § 1091(b)(2). To be subject to a heightened penalty under 23 V.S.A. § 1091(b), the State must show that a defendant's grossly negligent operation caused the death of another person. Death is thus a material element in a vehicular-homicide case. We need not decide here if the State always must show a risk of death or injury in grossly-negligent-operation cases where death did not result from the operation.

5

that he did not push the neighbor off the road, run into him, or drive into oncoming traffic. Defendant essentially challenges the jury's assessment of the evidence. We have recognized that "[t]he presence or absence of gross negligence turns upon the particular factual circumstances of each case, and therefore rests within the special province of the jury." State v. Koch, 171 Vt. 515, 516, 760 A.2d 505, 506 (2000) (mem.). Although defendant did not push the neighbor off the road or drive into oncoming traffic, there was still sufficient evidence for the jury to conclude that defendant's actions grossly deviated from the standard of care a reasonable driver would have exercised.

¶ 14. Defendant's comparison of his case to other gross-negligence cases is unavailing. We have repeatedly recognized, particularly in the gross-negligence context, that each case turns on its own facts. See, e.g., Langdon-Davies v. Stalbird, 122 Vt. 56, 57, 163 A.2d 873, 874-75 (1960) ("[D]ecided cases are of little assistance in determining the existence of gross negligence under the evidence in a particular case. Each case turns almost entirely on its own peculiar factual situation."). Here, there was sufficient evidence to allow the jury to find defendant guilty, and defendant's motion for judgment of acquittal was therefore properly denied.

## II. Probation Conditions

¶ 15. We next consider defendant's challenges to his probation conditions. The probationary sentence followed a contested sentencing hearing at which the State requested a one-to-six month suspended sentence with two years of probation. In support, at the sentencing hearing, the State presented evidence from a police detective regarding several incidents involving defendant. The police detective first recounted that in June 2011 defendant was in a motor-vehicle accident, and initially reported that he had fallen asleep at the wheel. Later, however, defendant said that he had saved other people's lives by swerving off the road to avoid a crash. The detective was called because defendant's demeanor "seemed off" and it appeared that something was wrong with defendant.

¶ 16. In another incident, defendant called police to report a large marijuana operation near his home. In response, the police searched using helicopters, but found no evidence of marijuana. In the same general timeframe, defendant was asked to leave the town hall after yelling and calling the town clerk a vulgar name. During the incident, defendant was very agitated and said strange things. The detective also described a call from a concerned citizen after defendant visited a construction site with a loaded handgun. Defendant reportedly recounted wild, fabricated stories to the construction workers. His behavior made the construction workers nervous as defendant did not appear to be in his right mind.

¶ 17. Additionally, the detective recounted that, in September 2012, defendant reported that a chainsaw in the woods was causing a noise disturbance. The officer testified that, at the time, it was late at night and pouring rain. The officer investigated, but did not hear any noise, see any tire tracks, or find any other evidence to indicate that there was or had been someone in the woods running a chainsaw. When the officer relayed this information to defendant, defendant refused to believe him. Defendant insisted that he could hear the chainsaw as he was talking to the officer. The officer did not hear any noise.

¶ 18. As to the charged incident, defendant told the officer afterwards that he acted the way he did because he had to handle the issue on his own since the police would not have done anything about it. Defendant made strange and threatening comments during his police interview. Defendant said that he was working for the Drug Enforcement Agency and for a former state's attorney, and that he was not supposed to be talking about it. The detective investigated these statements and found no merit to them. Defendant also said that two neighbors had "witnessed everything," which also was not true. Additionally, defendant told the detective that the neighbor involved in the charged incident had run another neighbor off the road. When the officer contacted that person, she said that she had not been home at the time of the charged crimes.

¶ 19. At sentencing, defendant's wife testified, and defendant, during allocution, decided to offer testimony under oath. Defendant's wife discussed the town hall incident, asserting that defendant had not been yelling. She indicated that she and defendant were treated like "peons" by the police and that the police repeatedly told them that there was nothing police could do about their complaints. She stated that she did not believe that defendant's mental state was deteriorating. Defendant similarly testified that he did not think the police took his complaints seriously. Defendant said that the "only reason" the charged conduct occurred was because the neighbor almost hit defendant and his wife. Defendant stated that when he stopped his car in front of his neighbor, he thought he was doing it safely.

¶ 20. As part of his allocution, defendant told the court that there were "so many things that happened in this case that [had not been] brought to light at all." He indicated that he had a list of "dates and times and the people [he had] spoke[n] to in the internal affairs, all the way right up straight through to the FBI that precedes everything that has transpired in the courtrooms to date." He revisited this topic during his testimony, stating that he had spoken to the state's attorney about the town police department and that he had also called state officials to request that someone oversee the police department.

¶ 21. The State asked the court to impose a one-to-six month sentence, all suspended, with two years of probation based on defendant's erratic behavior. The State argued that, in light of defendant's various complaints and the complaints about his conduct, probation could reduce defendant's troublesome interactions with police, his neighbors, and the community at large. The State argued that a key component of defendant's probation was requiring a mental-health evaluation to identify mechanisms for achieving this. The State requested that the court impose the "standard conditions of probation," with the exception of restrictions on defendant's out-of-state travel, the imposition of a curfew, and the restriction on his associations (other than contacting, abusing, or harassing the neighbor). As a "special" condition, the State requested that defendant visit a mental-health counselor for an initial screening, follow any

8

recommendations thereafter, and sign the necessary waivers to allow his probation officer to monitor his attendance and participation.

¶ 22. Defendant asked the court to impose a deferred sentence without any probation conditions. If probation was imposed, defendant argued that the sole condition should be that he not be convicted of another crime or engage in conduct prohibited by law. Defendant stated that "the only standard condition of probation that there is, is that you not be convicted of another crime." Defendant argued that it was reasonable for him to believe that the police would not have acted on his noise complaint. He expressed concern that the imposition of any probation conditions would "set [him] up" for a violation because he believed that the local police would supervise him more strictly than other probationers. Defendant also voiced concern over a mental-health condition, and over any "vague" release he may be required to sign in conjunction with mental-health counseling.

¶ 23. At the close of the hearing, the court sentenced defendant to two concurrent thirty-to-sixty day sentences, all suspended, with two years of probation. The court found no merit to defendant's assertion that police did not respond to his calls, finding that the police department had reacted appropriately and with extreme patience to the concerns raised about or by defendant. The court discussed each of defendant's interactions with police set forth above. It found the notion that the police were persecuting defendant at odds with reality.

¶ 24. The court expressed concern about defendant's mental state. The court found that, like the conduct at issue here, defendant's prior interactions with police, particularly the town hall incident, demonstrated that defendant had trouble controlling his anger and that defendant was acting out unreasonably. The court rejected defendant's suggestion that the police would not have acted on his noise complaint, explaining that the evidence showed that police had responded to all of defendant's various complaints and investigated them fully. The court thus noted that defendant had a paranoid and a persecutory belief with respect to the police

9

department. The court also rejected the notion that if defendant was placed on probation, the police would treat him differently than any other probationer.

¶ 25. The court indicated that its main goal was to ensure that defendant's mental-health issues were addressed, not only to protect the public but to lessen defendant's burden on authorities who had to respond to what were sometimes fantastical reports. The court rejected defendant's request for a deferred sentence, finding such relief inappropriate in light of the jury's verdict and defendant's refusal to accept full responsibility for his actions.

¶ 26. The court imposed "the standard conditions of probation," with two exceptions. The court also ordered that defendant: have no contact with his neighbor; undergo a mental-health screening and follow any counseling recommendations, including anger-management counseling if recommended; and sign any release so that his probation officer could monitor his participation and attendance if the counseling was recommended. Specifically, the probation order, signed by the court and defendant, included the following conditions:

> A. You shall notify your probation officer within 48 hours if you are arrested or given a citation for a new offense.
>
> B. You must not be convicted of another crime.
>
> C. You must regularly work at a job or look for work, if your probation officer tells you to do so. You must get job training if your probation officer tells you to do so.
>
> D. You must regularly work at a community service job if the court orders you to do so.
>
> E. You must support your dependents and meet other family responsibilities.
>
> F. You must meet with your probation officer or designee whenever he/she tells you to do so.
>
> G. If you change your address or move, you must tell your probation officer within two days.
>
> H. If you change or lose your job, you must tell your probation officer within two days.

I. You cannot leave the State without written permission from your probation officer. [By separate notation at the bottom of the probation order, this condition was removed.[2]]

J. Upon request, and without delay, you must allow the probation officer to visit you wherever you are staying.

K. If the probation officer or the court orders you to go to any counseling or training program, you must do so. You must participate to the satisfaction of your probation officer.

L. You must not buy, have or use any regulated drugs unless they are prescribed by a doctor.

M. Your probation officer or any other person authorized by your probation officer can require you to have random urinalysis testing.

N. Violent or threatening behavior is not allowed at any time. [By separate notation at the bottom of the probation order,[3] the trial court struck this language and substituted: "You shall not engage in behavior that [would cause] a reasonable person [to] fear property damage or bodily injury."]

O. You shall not operate, try to operate or be in actual physical control of a motor vehicle on a public highway unless in possession of a valid Vermont operator's license.

P. You shall not drink alcoholic beverages to the extent they interfere with your employment or the welfare of your family, yourself or any other person. You must submit to any alcosensor test or any other alcohol test when your probation officer or their designee tells you to do so.

---

[2] Defendant argues that inclusion of this condition in the list on the probation order, with a separate note at the end indicating that the court is not imposing the condition, is confusing. He asks this court to strike Condition I from the order entirely. We agree that the use of a pre-printed template listing a number of conditions, with a notation at the end removing specified listed conditions is confusing. The use of a form with check-boxes, pursuant to which the court would opt in to each condition it sought to apply in a particular case, would avoid such confusion. But insofar as the trial court's order effectively strikes Condition I from the list of applicable conditions, we need not strike the condition on appeal and will not impose specific formatting requirements on the trial court in connection with this condition.

[3] The trial court substituted a revised formulation of Condition N presumably in recognition of this Court's decisions holding that the "violent or threatening behavior" language did not provide the defendant sufficient notice of what actions would violate this provision in particular cases. See, e.g., State v. Sanville, 2011 VT 34, ¶¶ 10-11, 189 Vt. 626, 22 A.3d 450 (mem.) (holding that condition prohibiting "violent or threatening behavior" was too vague to fairly inform defendant that his "mouthy and obnoxious" statements to his landlord would subject him to a loss of freedom).

11

Q. If the [Department of Corrections (DOC)] asks, you must furnish information, including financial information about money earnings and property which will enable the Department to collect restitution.

R. If restitution is ordered, you must fully cooperate with the Restitution Unit.

S. You will pay any unpaid amounts due to the court or the Tax Department for any legal services provided at state expense.

Other Conditions:

. . . .

. . . Defendant shall participate fully in and successfully complete mental health counseling to include anger management to the full satisfaction of probation officer and execute waiver so probation officer can monitor attendance and participation.

33. You shall not harass or abuse nor cause to be harassed or abused [the complaining witness].

34. You shall not initiate nor maintain contact with [the complaining witness] except as permitted by your probation officer to include in person, in writing, by telephone, by e-mail or through a third party, except at his/her request and as approved by your probation officer.

¶ 27. Defendant raises several challenges to the probation conditions. We begin with some general points and then address each of defendant's specific arguments in turn.

A. Statutory Framework and the "Standard Conditions"

¶ 28. A trial court enjoys broad discretion in fashioning a sentence. State v. Gibney, 2003 VT 26, ¶ 53, 175 Vt. 180, 825 A.2d 32; State v. Keiser, 174 Vt. 87, 101, 807 A.2d 378, 389-90 (2002) (citing cases). This discretion extends to the imposition of probation where the court has "broad statutory authority to suspend all or part of a criminal sentence and place the defendant on probation." State v. Nelson, 170 Vt. 125, 128, 742 A.2d 1248, 1250 (1999); see State v. Campbell, 2015 VT 50, ¶ 9, ___ Vt. ___, ___ A.3d ___ (noting that this Court reviews imposition of probation conditions for abuse of discretion). The relevant statute concerning probation conditions empowers the court to impose conditions of probation that the court "in its

discretion deems reasonably necessary to ensure that that the offender will lead a law-abiding life or to assist the offender to do so." 28 V.S.A. § 252(a).

¶ 29.    As to the conditions that may be imposed, the statute directs that the court "<u>shall</u> provide as an explicit condition of every sentence to probation that if the offender is convicted of another offense during the period for which the sentence remains subject to revocation, then the Court may impose revocation of the offender's probation." <u>Id</u>. (emphasis added).  In addition, the statute includes a list of more than a dozen conditions that a court "may" require, such as paying a fine, performing community service, or refraining from contact with the victim.  <u>Id</u>. § 252(b)(1)-(17).  The last entry in the statutory list, which contains broad catch-all authorization for other probation conditions, provides that the court may require an offender to:

> Satisfy any other conditions reasonably related to his or her rehabilitation. Such conditions may include prohibiting the use of alcohol, prohibiting having contact with minors, prohibiting or limiting the use of a computer or other electronic devices, and permitting a probation officer access to all computers or other digital or electronic media, mail covers, subscription services, and credit card statements. The Court shall not impose a condition prohibiting the offender from engaging in any legal behavior unless the condition is reasonably related to the offender's rehabilitation or necessary to reduce risk to public safety.

<u>Id</u>. § 252(b)(18).

¶ 30.    In this context, we digress to clarify the use of the term "standard condition."  The conditions of probation imposed by the trial court are drawn from a probation-order template generated by the Office of the Court Administrator.  The form identifies conditions A through S as "standard conditions of probation."  As Justice Dooley explained in a recent concurrence, the conditions informally described as "the standard conditions" are "a package of standard conditions that are part of a template generated by the [Judiciary's] computer program used for

13

probation sentences or included in the Department of Corrections recommendations in the presentence investigation."[4] Campbell, 2015 VT 50, ¶ 30 (Dooley, J., concurring).

¶ 31. Although the court-generated template uses the term "standard" to describe this package of conditions, it is unclear what makes them "standard." Conditions A-K, Q, and R on the template are similar, but not identical, to permissive conditions listed by the Legislature in 28 V.S.A. § 252(b)(1)-(14). Conditions L-P and S on the form are not found in the statutory list. It is not clear whether the list of conditions has been consistently used across criminal division units throughout the state, and, if so, for how long. The conditions were not adopted pursuant to a formal judiciary rulemaking process, subject to public input through notice and comment and consideration by the joint legislative committee on judicial rules. See Vt. Const. ch. II, § 37; 12 V.S.A. §§ 1-3 (authorizing judiciary to make rules or adopt forms of general applicability, and prescribing process for legislative review of rule); A.O. 11 (setting forth rulemaking process for public notice and comment). They were also not formulated pursuant to a process authorized by statute,[5] nor an Administrative Order of the Court.[6] Further, although in one other instance the

---

[4] In this case, the conditions at issue appear on an internal judiciary template. The same conditions also appear on a plea agreement form generated by the Office of the Court Administrator. Form 3699A, Notice of Plea Agreement, https://www.vermontjudiciary.org/eforms/Form%20369A.pdf. The specific conditions on this form, like those on the internal probation order template relied upon by the trial court in this case, have changed over time.

[5] By contrast, in the federal system, probation conditions and guidelines for the imposition of probation are developed by the Sentencing Commission, an independent agency in the judicial branch, pursuant to statutory authorization. See 28 U.S.C. §§ 991-998 (establishing Sentencing Commission as independent agency in judicial branch); id. § 994(a)(1)(A) (charging Sentencing Commission with providing guidelines on when sentence should include probation and developing recommended conditions of probation); U.S. Sentencing Guidelines § 5B1.3 (listing recommended probation conditions and special conditions that can be imposed if appropriate).

[6] Forms for the District Court, the precursor to the Criminal Division, were at one time included in an appendix to the criminal rules, but in an order effective February 1, 1984, the Supreme Court amended the rules to delete the appendix of forms. See Order Amending the Vermont Rules of Criminal Procedure, October 31, 1983. The accompanying Reporter's Notes explain as follows:

probation statutes reference "standard and special conditions of probation," 28 V.S.A. § 205(c)(1), the terms are not defined in the statute and are not used § 252.

¶ 32. So, although the conditions may be "standard" in the sense that they appear in an internal judiciary probation order template, as well as a standard plea agreement form generated by the Court Administrator, the inclusion of these particular conditions on a form labeled "standard conditions" does not reflect a judicial determination that every condition included on the form is presumptively valid, or that the whole package of conditions may be applied in every case. Nor does the inclusion of these conditions on a form generated by the Court Administrator reflect a judicial determination that all of the conditions on the list are constitutional and valid on their face and provide adequate notice of what conduct may lead to a revocation of probation. In that sense, defendant is correct that, notwithstanding the caption on the court's probation order template, the only truly "standard" condition is the one providing that the court may revoke an offender's probation if the offender is convicted of another offense during the period when the sentence is still subject to revocation. 28 V.S.A. § 252(a).

---

The Appendix of Forms is deleted. In recent years, criminal procedure forms have been created and updated by the Office of the Court Administrator. These forms are routinely used by judges and prosecutors.

The Appendix has not kept up with the changes in forms. Thus, although the forms in the Appendix are sufficient under the rules by virtue of Rule 58, their use would be inappropriate. By this action, the Appendix of Forms is deleted. To the extent there are forms, they will be created by the persons using them or the Court Administrator. They will not have official endorsement by the rules; nor will their usage be required unless a specific rule so provides.

Since that amendment, forms for the Criminal Division have not been adopted through a rulemaking process. The Criminal Division Oversight Committee is charged to "[m]ake recommendations regarding statutory revisions or additions, amendments to court rules, development of forms, and implementation of uniform procedures for docketing, calendaring, scheduling, and caseflow management." Charge and Designation, Criminal Division Oversight Committee (July 25, 2014) (emphasis added). The Chief Superior Judge, formerly the Administrative Judge, has an informal consultative role in connection with the adoption of forms, but the ultimate decision to adopt a form, or an internal court template, rests with the Court Administrator.

15

B. Nexus to the Offense

¶ 33. Defendant's first set of challenges is not directed at the validity of particular conditions, but focuses on the propriety of the court's imposition of the conditions in this case. He argues that probation conditions must be reasonably related to the crime for which the defendant was convicted, and that probation conditions with no relationship to that crime are not valid. On this basis, he challenges conditions A-S, except condition B, which prohibits him from being convicted of another crime, condition K, requiring him to attend counseling, and condition N, which precludes "behavior that [would cause] a reasonable person [to] fear property damage or bodily injury."[7]

¶ 34. The State argues that those conditions that are listed in the statute (the State points to conditions A-K, Q, and R) are specifically authorized conditions, and presumptively valid unless unconstitutional.[8] In the State's view, only conditions not specifically listed in the statute, and imposed pursuant to the statutory "catch-all" authority are subject to the requirement that the probation condition reasonably relate to the crime.

¶ 35. The question of whether those probation conditions listed in the statute are presumptively valid in every case is a legal one that we review de novo. State v. Hemingway, 2014 VT 48, ¶ 10, 196 Vt. 441, 97 A.3d 465.

---

[7] Defendant preserved his objection that the conditions did not have a sufficient nexus to his crime or to his rehabilitation. In answer to the State's recommendation that defendant be placed on "standard" probation conditions, defendant argued that the only "standard" condition was that he not be convicted of another crime, and that no other conditions were necessary in his case.

[8] For the purposes of this "nexus" discussion only, we assume that the conditions identified by the State as presumptive are indeed included in the statutory list of permissible conditions, although we note that some of the conditions identified by the State as matching a condition in the statutory list differ in significant ways. For example, Condition C of the probation order in this case provides: "You must regularly work at a job or look for work, if your probation officer tells you to do so. You must get job training if your probation officer tells you to do so." This condition is not included in the statute. The closest match in the statute provides: "Work faithfully at a suitable employment or faithfully pursue a course of study or of vocational training that will equip the offender for suitable employment." 28 V.S.A. § 252(b)(1). The statutory permissive condition does not reference the probation officer's authority to determine whether and how defendant must comply with the condition.

¶ 36. We have repeatedly held that probation conditions must be reasonably related to the crime for which an offender was convicted. State v. Peck, 149 Vt. 617, 622-23 547 A.2d 1329, 1333 (1988). In Peck, an offender convicted of simple assault challenged a probation condition requiring him to engage in sex-offender treatment. This Court noted that "a condition is valid if the conduct it requires is not itself criminal and is reasonably related to the crime of which the defendant was convicted." 149 Vt. at 623, 547 A.2d at 1333. We did not limit this general principle to probation conditions not specifically listed by the Legislature, although the condition at issue in that case falls into the statutory catch-all rather than any specifically enumerated condition. We concluded that "[c]ompletion of counseling in a sex offender's group is reasonably related to the crime of simple assault when the assault was of a sexual nature. In addition, participation in sex offender's counseling may serve to protect the public against similar misconduct in the future." Id.

¶ 37. Subsequently, in State v. Whitchurch, we reiterated and elaborated on this general rule, stating:

> In State v. Peck, we announced as a general rule that a probation condition is valid if it is reasonably related to the crime for which the defendant was convicted. Peck is based on the leading California case of People v. Lent, 541 P.2d 545 (1975). Lent holds that a probation condition will be found valid unless: (1) it has no relationship to the crime for which the defendant was convicted; (2) it relates to conduct which is not itself criminal; and (3) it requires or forbids conduct which is not reasonably related to future criminality.
>
> The limitations on probation conditions are also discussed in the American Bar Association, Standards for Criminal Justice 2d § 18-2.3. Section 18-2.3(e) provides that "conditions imposed by the court should be reasonably related to the purposes of sentencing, including the goal of rehabilitation, and should not be unduly restrictive of the probationer's liberty or autonomy." It goes on to provide that where fundamental rights are involved, special care should be used to avoid overbroad or vague restrictions.

17

155 Vt. 134, 137, 577 A.2d 690, 692 (1990) (citations omitted).[9]

¶ 38. We reiterated these principles again in State v. Moses, noting, "Vermont law authorizes a sentencing court to set probation conditions that reasonably relate to the crime committed or that aid the probationer in avoiding criminal conduct." 159 Vt. 294, 297, 618 A.2d 478, 480 (1992). Drawing from a Second Circuit decision, we explained:

> "[A] condition is related to the goals of probation if it is designed, in light of the crime committed, to promote the probationer's rehabilitation and to insure the protection of the public. A condition is reasonable if it is not unnecessarily harsh or excessive in achieving these goals. . . . [C]onditions that restrict a probationer's freedom must be especially fine-tuned."

Id. (alterations in original) (second emphasis added) (quoting United States v. Tolla, 781 F.2d 29, 34 (2d Cir. 1986)). Applying these limitations, this Court concluded that a condition prohibiting the defendant from maintaining a checking account was unduly restrictive given its highly attenuated connection to her criminal activity of kidnapping and elderly abuse. Id. at 299, 618 A.2d at 481; see also Campbell, 2015 VT 50, ¶¶ 9, 16; State v. Rivers, 2005 VT 65, ¶ 9, 178 Vt. 180, 878 A.2d 1070 ("[A] probation restriction must be reasonably related to protecting the public from a recurrence of the crime that resulted in the imposition of probation, and must serve the statutory purpose of assisting the probationer to lead a law-abiding life."); Nelson, 170 Vt. at 128, 742 A.2d at 1250 ("While not without limitation, a trial court's discretion in this context is expansive, and will generally be upheld if the probation condition is reasonably related to the crime for which the defendant was convicted."); State v. Emery, 156 Vt. 364, 368, 593 A.2d 77, 79 (1991) ("Generally, probation conditions are valid if reasonably related to the crime for which

---

[9] In Whitchurch, the defendant sought modification of a probation condition on the ground that there was nothing in the record relating the probation condition at issue to the crime for which he was convicted or to his rehabilitation. Because the defendant had accepted the probation condition pursuant to a plea agreement, we concluded, "It would be wholly inappropriate to ground relief on the failure of the record to show a sufficient connection between the offense and the probation condition where defendant's agreement to the probation condition caused the absence of a record." 155 Vt. at 139, 577 A.2d at 693. In this case, we are directly reviewing probation conditions that were imposed by the court following a contested sentencing hearing, so the limitation on review of the probation condition articulated in Whitchurch does not apply.

18

the defendant was convicted." (quotation omitted)).  In sum, we have consistently recognized that a probation condition that restricts otherwise lawful conduct must be reasonably related to a defendant's particular characteristics, including the crime for which the defendant was convicted.

¶ 39.   For several reasons, we reject the State's suggestion that this requirement does not apply to conditions that are specifically included in the statutory list of permissive conditions. See 28 V.S.A. § 252(b).  First, we have repeatedly articulated the requirement of a reasonable relationship between the crime for which a defendant has been convicted and the imposition of a specific probation condition, and we have never suggested that the requirement does <u>not</u> apply to those conditions that appear in the statutory list of permissive conditions.  Nor have we limited our description of the parameters of permissible probation conditions to conditions imposed pursuant to the authority conveyed through the statutory "catch-all" provision.

¶ 40.   Second, our repeated holdings requiring a reasonable nexus between the crimes for which a defendant has been convicted and the probation conditions applied have rested on statutory and constitutional considerations beyond Vermont's particular statute concerning probation conditions.  For example, in <u>Whitchurch</u>, we relied heavily on the California case of <u>People v. Lent</u>, 541 P.2d 545, and on the American Bar Association, Standards for Criminal Justice 2d § 18-2.3, in establishing the contours of "probation conditions that meet constitutional and statutory mandates."  <u>Whitchurch</u>, 155 Vt. at 137, 577 A.2d at 692.

¶ 41.   Third, the suggestion that imposing the entire slate of seventeen permissive probation conditions listed in the statute is presumptively appropriate in every case runs afoul of the principles of individualized sentencing.  <u>State v. Lumumba</u>, 2014 VT 85, ¶ 27, ___ Vt. ___, 104 A.3d 627 ("[T]he court did have an obligation under Vermont's individualized sentencing process to examine defendant's case and to consider the consequences of his particular situation in fashioning a sentence.");  <u>State v. Bogert</u>, 2013 VT 13A, ¶ 22, ___ Vt. ___, 109 A.3d 883 (noting requirement that probation condition be "narrowly tailored to fit the circumstances of the individual probationer" (quotation omitted));  <u>State v. Powers</u>, 173 Vt. 550, 551, 789 A.2d 962,

964 (2001) (mem.) (noting "the power and responsibility of the courts to specify conditions of probation individually suited to ensuring offenders become law-abiding citizens"). A condition requiring an offender to work at suitable employment, 28 V.S.A. § 252(b)(1), would not likely be individually tailored to an offender who is past retirement age or who is totally disabled from work. A condition that limits an offender's access to firearms, id. § 252(b)(8), might not make any sense as applied to a nonviolent offender convicted of shoplifting. The view that all of the conditions listed in 28 V.S.A. § 252(b) may be imposed on all offenders, without regard to the connection between each condition imposed and the defendant's particular circumstances, including the crime for which an individual offender is convicted, flies in the face of the goal of individualized sentencing. See Campbell, 2015 VT 50, ¶ 30 (Dooley, J., concurring) ("[R]outine acceptance of 'standard' conditions without consideration of their applicability to the circumstances before the court is inadequate, particularly where, as here, specific conditions are challenged. The routine inclusion of conditions in a computer program or a presentence investigation is not based on a determination that these conditions are preapproved for every case or for every case in which the defendant has been convicted of a particular crime. Instead, they are a tool to put before the sentencing judge a range of potential conditions for consideration if justified by the circumstances of the case." (citation omitted)).

¶ 42. Finally, we conclude that the State's approach does not reflect the best reading of 28 V.S.A. § 252. In construing the statute, we look first to the language and seek to give effect to the plain meaning of the words. State v. Stokes, 2013 VT 63, ¶ 17, 194 Vt. 351, 83 A.3d 567. The statute delineates between the mandatory condition requiring that a probationer not be convicted of another offense by using the word "shall," and the permissive list of conditions prefaced with the word "may." 28 V.S.A. § 252(a), (b). Nowhere does the statute state that the permissive conditions are presumptively valid in all cases, or suggest that the sentencing court should generally impose them all. Instead, the statute vests the sentencing court with discretion to impose the listed conditions. That discretion is bounded by the statutory requirement that the

20

conditions be "reasonably necessary to ensure that the offender will lead a law-abiding life." 28 V.S.A. § 252(a); see State v. Whiteway, 2014 VT 34, ¶ 18, 196 Vt. 629, 95 A.3d 1004 (mem.) (stating that although statute grants court discretion, this "must be exercised in accordance with certain standards").

¶ 43. The decision to impose a condition from this list requires the exercise of discretion, which necessarily implies an individualized evaluation. As we have explained, judicial discretion means " 'sound discretion,' not discretion exercised arbitrarily, but with due regard for that which is right and equitable under the circumstances, and directed by reason and conscience to a just result." State v. Hunt, 145 Vt. 34, 43, 485 A.2d 109, 113 (1984) (quotation omitted). As another court described, where the Legislature has given the court discretion in imposing probation conditions, the imposition of those conditions must not "rest on the rote application of a blanket rule"; rather, it requires a particularized inquiry into the considerations pertinent to a specific defendant. People v. Penoli, 53 Cal. Rptr. 2d 825, 828 (Ct. App. 1996).

¶ 44. With these principles in mind, we review the imposition of particular probation conditions in this case under an abuse-of-discretion standard, and will uphold the conditions as long as "there is a reasonable basis for the court's action." State v. Savo, 141 Vt. 203, 208, 446 A.2d 786, 789 (1982). The burden of proof is on the party alleging abuse, and that party must show that the court failed to exercise its discretion or did so for "reasons clearly untenable or to an extent clearly unreasonable." Id.

¶ 45. We note, however, that although defendant contends that the court was required to make particularized findings as to each condition, findings are not always a prerequisite to a proper exercise of discretion. To determine if the court acted within its discretion in imposing particular conditions, we have not required the sentencing court to make specific findings regarding each condition, but have looked to whether the record supports the court's exercise of

21

its discretion.[10]  See Campbell, 2015 VT 50, ¶¶ 16-17; Moses, 159 Vt. at 297, 618 A.2d at 480 (evaluating whether condition was within court's discretion by looking at evidence in record).

¶ 46.    Therefore, we turn first to defendant's lack-of-nexus challenges to specific probation conditions.

i.  Conditions A, F, G, H, and J—Supervision and Administration

¶ 47.    We begin with five conditions that relate to the supervision of defendant by his probation officer.  Condition A states that defendant must notify his probation officer within forty-eight hours of an arrest or citation for a new offense.  Condition F requires defendant to meet with his probation officer when asked.  Conditions G and H require defendant to tell his probation officer within two days of changing address or moving, and of losing or changing employment.  Condition J states that defendant must allow his probation officer to visit him wherever he is staying upon request.  Defendant argues that these requirements are not related to his crime of grossly negligently operation and will not curtail future criminality.

¶ 48.    We conclude that the record supports imposition of these conditions as properly related to the supervision of defendant.  Based on testimony at the sentencing hearing that defendant had exhibited unusual behavior and angry outbursts, the court here found that probation was appropriate to manage defendant's behavior and curtail his interactions with law-enforcement.  All of these five conditions directly relate to the supervision of defendant by his probation officer to assist defendant in leading a law-abiding life.  Condition A—that defendant notify his probation officer of an arrest—is linked to enforcing the mandatory condition that defendant not be convicted of another crime, and assists the probation officer in knowing if defendant has been involved in any criminality.  To properly supervise defendant, his probation

_____

[10] In certain instances, particularized findings may be necessary to support imposition of a condition for reasons other than demonstrating the requisite nexus.  For example, as explained more fully below, when the court makes a broad delegation of power to the probation officer, findings may be necessary to justify such a delegation.  See infra, ¶ 66.  Moreover, where the nexus between a particular condition and defendant's conviction and particular rehabilitative needs is not clear from the evidence, findings can ensure that a reviewing court understands the sentencing court's reasoning.

officer must also meet with defendant regularly, and know defendant's current address and employment. See United States v. Smith, 982 F.2d 757, 764 (2d Cir. 1992) (concluding that condition that probationer meet regularly with his probation officer was "a basic administrative requirement essential to the functioning" of probation system and within court's discretion); McCoy v. State, 568 P.2d 353, 354 (Okla. Crim. App. 1977) (upholding condition requiring defendant to report to his probation officer as furthering probation officer's statutory duty to supervise probationer). The trial court could reasonably conclude that defendant's probation officer needs to know where defendant is living and working to understand defendant's environment, to visit with defendant, and to identify any impediments to successful rehabilitation. Thus, all of these conditions reasonably relate to aiding defendant in leading a law-abiding life in light of the crime for which he was convicted, and were within the court's discretion in this case.[11] Imposition of substantially similar conditions relating to the administration of probation would be within the trial court's discretion in any case in which probation is ordered.

---

[11] Defendant contends that the State's supervisory goals could have been met with less restrictive conditions. In particular, defendant challenges the two-day reporting time for changes in residence or employment, and the requirement to meet with his probation officer on demand. Several of these conditions are similar to permissive statutory conditions, with important differences. For example, the condition imposed here requires defendant to meet with his probation officer "whenever he/she tells you to do so." The corresponding permissive statutory condition requires that a probationer "[r]eport to a probation officer at reasonable times as directed by the Court or the probation officer." 28 V.S.A. § 252(b)(9) (emphasis added). Condition J requires defendant to allow his probation officer to visit him wherever he is staying "[u]pon request, and without delay." The corresponding statutory condition requires a probationer to "[p]ermit the probation officer to visit the offender at reasonable times at his or her home or elsewhere." Id. § 252(b)(10). We do not consider whether the ordered conditions may be invalid as applied in a hypothetical case, or whether they must be construed to include a reasonableness requirement similar to the one in the permissive statutory conditions. For the purposes of defendant's nexus-based challenge, we conclude that the restrictions on defendant's liberty occasioned by these conditions are not so severe that they are "unduly restrictive of [his] liberty or autonomy" such that the State must use less restrictive methods to promote its supervisory goals. Whitchurch, 155 Vt. at 137, 577 A.2d at 692.

23

ii. Condition C—Employment, Training and Work Search

¶ 49.    Condition C requires defendant to regularly work at a job, look for work, or get job training if required by his probation officer.[12]  Defendant argues that his offenses were not connected to his lack of employment and that requiring employment will not prevent future criminal behavior.

¶ 50.    The State argues that active participation of a probationer in the workforce can be an important part of rehabilitation and therefore it is reasonable to empower defendant's probation officer to require job training or employment.  While this may be true generally, there are no facts in the record to support imposition of this condition as to defendant.  The evidence presented at the sentencing hearing demonstrated that defendant was formerly employed as a tow truck operator, and was on disability at the time of the hearing.  There is no suggestion in the record that his criminal conduct was connected to his lack of employment or that getting a job, instead of remaining on disability, would help him become more stable or reduce his risk of reoffending.  In fact, there is no evidence that defendant is capable of working.  Given the lack of any evidence to show that job training or work would address the circumstances underlying the criminal conduct for which he was convicted, or help him lead a law-abiding life in light of that crime, there were no grounds to impose Condition C.  We strike it from the probation order.

iii. Conditions D, Q, and R—Community Service and Restitution

¶ 51.    Some of the conditions that appear in the probation order are themselves inapplicable under the terms of the order.  Condition D requires defendant to work at a community-service job if the court so orders.  Conditions Q and R require defendant to provide

_____

[12]  As noted, supra, ¶ 34 n.8, this condition differs significantly from its closest statutory cousin insofar as it purports to delegate complete authority to compel a work search to defendant's probation officer.  See 28 V.S.A. § 252(b)(1) (providing that court may require defendant to "[w]ork faithfully at a suitable employment or faithfully pursue a course of study or of vocational training that will equip the offender for suitable employment").  The parameters of permissible delegation of authority to require such conditions are discussed infra, ¶¶ 63-73.  Because we conclude that in this case this condition fails at the "nexus" stage, we do not here consider whether the delegation was adequately supported by findings.

24

financial information for purposes of restitution and to cooperate with the restitution unit.[13] Because the court neither ordered community service nor imposed restitution, these conditions impose no real requirement on defendant and are inapplicable. They are stricken from the probation order.[14]

### iv. Condition E—Support of Dependents and Family Obligations

¶ 52. Condition E states that defendant must support his dependents and meet his other family responsibilities. Defendant contends that there was no evidence he had unmet family obligations or that meeting those obligations would curtail future criminality. The State argues that the condition requires only that defendant comply with any legal obligations he has with respect to support of dependents or obligations to family, such as a court-ordered child support obligation. Meeting such obligations is, the State argues, reasonably related to helping the defendant become "a law abiding and productive member of society."

¶ 53. We note at the outset that assisting the offender to "lead a law-abiding life" is a statutory goal of probation conditions, 28 V.S.A. § 252(a), while promoting an offender's productivity is not. Moreover, the State does not provide a specific citation to support its assertion that "[s]upporting one's dependents is required by law," instead citing generally to the chapter of the Vermont Code that deals with annulment and divorce. In that context, a court has the authority to issue orders requiring a party to pay specified support for the other spouse or a child. See, e.g., 15 V.S.A. §§ 658 (authorizing court to order child support payments in context of a divorce case), 752 (authorizing court to order spousal maintenance payments in context of divorce case). But the State has not attempted to explain the source or content of the broader general duty to support dependents on which it relies. Finally, we cannot completely untangle

---

[13] These conditions are similar to statutory conditions regarding restitution and community service. 28 V.S.A. § 252(b)(2), (6).

[14] The inclusion of these conditions highlights the fact that using a pre-printed form without check-boxes, or some other method of identifying only those conditions that a court affirmatively seeks to impose in a particular case, creates a greater risk that the probation conditions imposed will be overinclusive.

defendant's "relatedness" challenge from his argument that the condition is impermissibly overbroad and vague. Our inability to clearly discern what conduct is grounds for revocation of probation on the basis of this provision, or to read it as narrowly as the State contends that it is meant to be read, exacerbates the "relatedness" problem.

¶ 54. With these considerations in mind, we consider the evidence in this case. There was no evidence that defendant was subject to any court orders concerning support for his family. There was no evidence that defendant had failed in any way to meet his legal obligations to any family members. There was no evidence that defendant's conduct leading to his conviction was part of a broader pattern of neglecting his responsibilities, including familial responsibilities. On this record, we cannot find evidence to support the conclusion that this condition is reasonably related to defendant and the crime for which he was convicted such that it is a reasonable component of his rehabilitation. We strike Condition E.[15]

v. Compliance with Criminal Law—Condition L

¶ 55. Condition L directs that defendant must not buy, have or use any regulated drugs unless prescribed. Defendant contends that because his crime was not connected to drug use this condition is invalid because it is not linked to his crime or his rehabilitation.

¶ 56. A condition that forbids criminal conduct is valid. See Whitchurch, 155 Vt. at 137, 577 A.2d at 692 (explaining that probation condition is valid unless it has no relationship to underlying crime, relates to conduct which is not itself criminal, and requires or forbids conduct that is not reasonably related to future criminality). There was no abuse of discretion insofar as the purchase, possession, or use of regulated drugs is unlawful unless specifically authorized by law. See 18 V.S.A. § 4205 (prohibiting person from manufacturing, possessing, selling, prescribing, administering, dispensing, or compounding any regulated drug except as authorized). While there are particular circumstances in which an individual may possess

---

[15] Our conclusion on this point is heavily influenced by the breadth and vagueness of the condition. As noted above, we do not separately analyze defendant's challenge to the condition on the grounds that it is overbroad and impermissibly vague.

26

regulated drugs, see id. § 4203, these are limited and there is no evidence to show that they relate to defendant's situation. Because the condition precludes conduct that is criminal, the trial court was not required to find a reasonable relationship between defendant's conviction and the condition.

### vi. Alcohol Use and Drug Testing—Conditions M and P

¶ 57. Condition M allows defendant's probation officer to require him to submit to random urinalysis testing. Defendant's conviction was not related to the use of drugs or alcohol. There is no evidence that his conduct in this case was related to drug or alcohol abuse, or that he has a problem with drug or alcohol abuse. To the extent that the testing is not limited to detecting the use of regulated drugs and the condition thus authorizes regulation of otherwise lawful conduct, with significant implications for defendant's liberty, it must bear some reasonable relationship to the crime for which he was convicted. There is no such evidence in the record. Therefore, the condition is invalid and it is stricken from the probation order.[16]

¶ 58. Condition P states that defendant must not drink alcoholic beverages to the extent it interferes with his employment or the welfare of himself or his family, and that he must submit to an alcosensor test if required by his probation officer. Drinking alcohol to excess is not criminal. There is no evidence that defendant's conduct leading to his conviction was related to alcohol use, and that prohibiting drinking alcohol to excess is therefore reasonably related to preventing defendant's future criminality. Accordingly, we conclude that Condition P is not supported by sufficient evidence of a reasonable relationship between defendant, the crime for

---

[16] We strike the condition based solely on the lack of nexus. Defendant argues that condition M, which authorizes his probation officer to require random urinalysis, is unconstitutional. He argues that this Court has held that a probationer may not be subjected to a warrantless search in the absence of reasonable suspicion. State v. Lockwood, 160 Vt. 547, 558, 632 A.2d 655, 662 (1993). Because we have stricken this condition as unrelated to defendant's crime or rehabilitation, we do not reach this argument.

which he was convicted, and the condition.[17] We therefore strike Condition P from the probation order.[18]

### vii. Condition O—Operating Without A License

¶ 59. Condition O precludes defendant from operating a motor vehicle on a public highway "unless in possession of a valid Vermont operator's license." Defendant argues that his conviction is not related to unlicensed operation and therefore this condition is not related to his rehabilitation. Insofar as defendant was convicted of a crime relating to the operation of a motor vehicle, the court could reasonably conclude that a condition specifically requiring that defendant not drive without a license is reasonably related to defendant's rehabilitation.[19]

---

[17] Other states have similarly held that there is no basis to impose a condition precluding the use of alcohol to excess where alcohol use was not related to the underlying conviction and there was no evidence in the record to indicate that the defendant's problems arose from alcohol. See Hayes v. State, 665 So. 2d 339, 339 (Fla. Dist. Ct. App. 1995) (per curiam) (striking condition that defendant not use intoxicants to excess as not reasonably related to rehabilitation or to underlying offense); People v. Brattole, 655 N.Y.S.2d 719, 720 (App. Div. 1996) (holding there was no basis to impose conditions on defendant's use of alcohol following conviction for unlicensed operation where offense not impacted by alcohol use); State v. Wooten, No. 03AP-546, 2003-Ohio-7159, ¶¶ 15-17 (Dec. 30, 2003) (holding that alcohol was not related to defendant's conviction of driving without license and striking conditions requiring defendant to undergo drug assessment, possess no alcohol and submit to urinalysis); State v. Parramore, 768 P.2d 530, 532 (Wash. Ct. App. 1989) (striking probation condition requiring defendant to submit to breathalyzer where no present connection between conviction and defendant's use of alcohol).

[18] Defendant also challenges this condition as impermissibly broad and vague, arguing that it does not give him sufficient notice as to what expectations he is required to meet. See State v. Danaher, 174 Vt. 591, 593, 819 A.2d 691, 694 (2002) (mem.) ("Due process requires that the defendant receive fair notice as to what acts may constitute a violation of his probation." (quotation omitted)). Because we strike the condition in this case as not reasonably related to defendant and his crime, we do not address this challenge.

[19] Under 23 V.S.A. § 601, a Vermont resident must not operate a motor vehicle without a valid Vermont license. Driving without a license is a criminal violation in some circumstances, see, e.g., 23 V.S.A. § 674, and a civil violation in other circumstances, see id. § 676(a). Because the direct nexus between the crime for which defendant was convicted and this condition is clear, we need not decide whether the fact that this condition requires that an offender comply with a legal requirement the violation of which may constitute a civil violation rather than a criminal one is sufficient to support the condition in the absence of any nexus to the crime for which the defendant was convicted.

28

### viii. Condition S—Payment for Legal Services

¶ 60.     Condition S requires defendant to repay any unpaid amounts due for any legal services provided at state expense. Defendant contends that repaying amounts due for public-defender services will not advance a rehabilitative goal and therefore that this condition was beyond the court's discretion.

¶ 61.     Under 13 V.S.A. § 5238, a person who receives public-defender services may be required to pay all or part of those services as a copayment or reimbursement. In defendant's case, the record shows that the order granting defendant's request for public-defender services required defendant to pay $50 for those services. The order indicates that this amount must be paid within sixty days or it will be sent to the Tax Department for tax offset and collection. Condition S adds another enforcement mechanism for the State: the State may seek revocation of defendant's probation as a means of ensuring payment of defendant's debt to the State.

¶ 62.     Condition S requires defendant to comply with a lawful court order in the very case in which he was convicted, and seeks to ensure that he pay lawfully assessed costs arising from the underlying criminal violation. Payment of a copay for public-defender services following determination of a defendant's ability to pay is part and parcel of a defendant's taking responsibility for the actions giving rise to the conviction—a component of defendant's rehabilitation. Like a restitution requirement, the copayment requirement as a probation condition requires a convicted offender with the financial ability to pay for "losses sustained as a direct consequence of the crime of which the defendant is convicted." In re Fadden, 148 Vt. 116, 123, 530 A.2d 560, 565 (1987) (citing State v. Barnett, 110 Vt. 221, 231-32, 3 A.2d 521, 525 (1939)).[20] We need not decide whether a probation condition requiring compliance with court orders more generally must be reasonably related to a defendant's underlying conviction. Condition S solely applies to a court order arising from defendant's prosecution for the crime for

---

[20]     For these reasons, in imposing this requirement, the court is not acting as a debt collector for the state, but, rather, is imposing a condition that is reasonably related to defendant's rehabilitation in connection with the crime for which he was convicted.

which he was convicted and is therefore sufficiently related to his rehabilitation, in light of the crime of which he was convicted. We uphold Condition S.

## C. Unlawful Delegation

¶ 63. Defendant next argues that condition K, which requires defendant to attend "any counseling or training program" designated by his probation officer and to "participate to the satisfaction" of his probation officer, is an unlawful delegation of authority. Defendant has not challenged the related condition requiring that he complete mental-health counseling, including anger management.

¶ 64. The power to impose probation conditions rests with the court, not employees of the DOC. Rivers, 2005 VT 65, ¶ 15. For this reason we have explained that probation conditions must be precise enough to allow their implementation but not so broad that probation officers are effectively establishing the probationary terms. Id. (citing Moses, 159 Vt. at 300, 618 A.2d at 482). In Moses, this Court struck a probation condition that required a defendant to reside where the probation officer directed. 159 Vt. at 299-300, 618 A.2d at 481-82. We explained that, although the facts of the case supported restricting the location of the defendant's residence, the condition "turned over to a probation officer the complete power to determine defendant's residence, with no guiding standards." Id. at 300, 618 A.2d at 481. We held that conditions must provide some degree of flexibility for their implementation, but cannot provide a probation officer with "open-ended authority." Id. at 300, 618 A.2d at 482. We also recognized that the degree of discretion given to a probation officer must be limited in relation to the court's ability to "anticipate the relevant issues and construct a proper condition." Id. at 301, 618 A.2d at 482. We concluded that there was no reason a court could not anticipate the relevant issues associated with the defendant's change of residence, and construct a probation condition that addressed those issues rather than delegate broad authority to the probation officer. Id.

¶ 65. More recently, we struck down as plain error a similar condition requiring the defendant's probation officer to approve where the defendant lived and worked. State v.

Freeman, 2013 VT 25, ¶¶ 16-17, 193 Vt. 454, 70 A.3d 1008.  We explained that "[w]ithout any findings indicating the necessity of such a broad condition . . . [the condition] essentially allows the probation officer to dictate where defendant will live and work."  Id. ¶ 17.

¶ 66.  We reaffirmed this principle most recently in Campbell, a case in which the defendant challenged a condition giving defendant's probation officer the ability to restrict where the defendant lived and worked.  2015 VT 50.  Elaborating on Freeman and Moses, we held:

> Freeman expressly held what Moses only implied: a probation condition, such as the one in this case that authorizes a probation officer to control a probationer's place of employment without any guiding standards contained within the condition itself, may be acceptable where the sentencing court makes sufficient findings of fact justifying use of a probation officer's substantial discretionary power to implement the condition.  To be sure, the inclusion of more precise standards within a condition itself, providing implementation guidance to a probation officer . . . must be included in any situation where the court can anticipate the relevant issues.  As with the change of residence condition at issue in Moses, we conclude that the changing of one's employment "is not an incident of daily life," and we can discern no reason why the sentencing court "cannot anticipate the relevant issues and construct a proper condition."

Id. ¶ 27.

¶ 67.  Responding to the trial court's suggestion that employment exposing that defendant to alcohol would undermine his rehabilitation, we wrote,

> [I]f the concern is specific as to alcohol, as the sentencing court alluded to in its comment, we can discern no reason why the court would be incapable of crafting a condition that creates more specific guidelines for defendant's probation officer in imposing restrictions on where defendant may work.  Absent findings of fact justifying the condition as imposed, it cannot stand.

Id.

¶ 68.  Here, defendant argues that condition K is an unlawful delegation because it places no restriction on the type of training or counseling the probation officer can order.  Defendant posits that it allows the probation officer to order programming that is not connected to the facts of his conviction or to his rehabilitation needs.

31

¶ 69. The transcript reflects that defendant did not make a particularized objection to this condition. Defendant objected that other than the required do-not-commit-a-crime condition, the other conditions were not necessary. He did not, however, object that a condition allowing his probation officer to require him to attend counseling was an unlawful delegation of authority.[21] Therefore, we review defendant's argument for plain error. "Plain error can be found only in exceptional circumstances where a failure to recognize error would result in a miscarriage of justice, or where there is glaring error so grave and serious that it strikes at the very heart of the defendant's constitutional rights." State v. Brandt, 2012 VT 73, ¶ 25, 192 Vt. 277, 59 A.3d 141 (quotation omitted).

¶ 70. We conclude that the condition includes an overbroad delegation of authority not supported by findings. The condition gives the probation officer complete discretion in deciding whether and which counseling or training program defendant will attend, and is unsupported by particularized findings justifying not only the condition requiring counseling or training, but the broad delegation to the probation officer to determine the type of counseling or training. The court's findings about defendant's counseling needs were particularized. The court expressed that it was concerned about defendant's mental state, particularly given the evidence regarding his inability to control his anger and his behavior of acting out in unreasonable ways. To address this issue, the court imposed a separate probation condition requiring defendant to participate and complete "mental health counseling to include anger management."

¶ 71. The challenged condition is not limited to addressing these concerns; rather, it gives defendant's probation officer unfettered authority to decide whether and what type of counseling or training will be required. This is the type of "open-ended authority" that we have held is impermissible. Moses, 159 Vt. at 300, 618 A.2d at 482. That the trial court can readily

---

[21] We recognize that requiring a defendant to object to a condition prior to its imposition may be an impractical requirement where there is no prior notice that the court is considering imposing the condition. Here, however, because we conclude that the condition is erroneous even on a plain-error standard, we do not address any potential objection to our use of a plain-error standard.

anticipate the issues to be addressed in counseling is apparent from the court's more specific "special" condition addressing the individualized concerns about defendant's mental health.[22]

¶ 72.   Other federal and state courts have similarly concluded that conditions that assign a probation officer authority to decide whether a defendant must participate in a treatment program run afoul of separation-of-powers principles.   See United States v. Heath, 419 F.3d 1312, 1315 (11th Cir. 2005) (holding that condition allowing probation officer to decide whether defendant must participate in mental-health program was unlawful delegation of judicial function in violation of Article III of U.S. Constitution); United States v. Kent, 209 F.3d 1073, 1074, 1079 (8th Cir. 2000) (concluding that condition stating that defendant must "participate in an appropriate psychological/psychiatric counseling program as directed by his probation officer" improperly delegated judicial function to probation officer); State v. Blakney, 2014 S.D. 46, ¶ 14, 851 N.W.2d 195 (reversing probation condition that provided probation officer with "ultimate authority" to determine whether sex-offender treatment would be required as "an unlawful delegation of judicial authority").   While it may be appropriate for a court to delegate authority to a probation officer to choose among available programming options addressing specified issues, a delegation of full authority for imposing counseling and determining the parameters of that condition is impermissible.   See Larson v. State, 572 So. 2d 1368, 1371 (Fla. 1991) ("[R]easonable delegations of incidental discretion are permissible if sufficiently circumscribed by the trial court.").

¶ 73.   Further, imposition of the condition amounted to plain error.   Our law has been established for some time that "[i]t is improper for the court to delegate the power to impose

---

[22]   The State asks us to conclude that condition K has been modified by that separate condition to a more narrowly tailored requirement.   But condition K says what it says.   If the State were right that condition K actually means something substantially different from what it says in light of the separate "special" condition, then the condition would suffer from a different flaw: as written, it would fail to give reasonable notice of what is required of defendant.   See Danaher, 174 Vt. at 593, 819 A.2d at 694 (stating that "[d]ue process requires that the defendant receive fair notice as to what acts may constitute a violation of his probation" (quotation omitted)).

probation conditions to a probation officer." Moses, 159 Vt. at 300, 618 A.2d at 481-82. The delegation in this case deprives defendant of a substantial right and affects the integrity of the judicial process by giving the probation officer authority reserved to the courts. See Freeman, 2013 VT 25, ¶ 17 (concluding that imposition of condition allowing probation officer to dictate where defendant will live and work was plain error); see also Heath, 419 F.3d at 1315 (concluding that court committed plain error by delegating to probation officer authority to decide whether defendant had to participate in mental-health program because error was plain and affected substantial rights). Therefore, we remand to the trial court for an opportunity to make findings to support the broad delegation, revise the condition to provide more tailored constraints on the probation officer's implementation of the condition, or strike it.[23]

Defendant's conviction is affirmed. Conditions C (employment and work search), D (community service), E (support dependents), M (random urinalysis), P (alcohol consumption), Q (financial information), and R (restitution) are stricken from defendant's probation order. The matter is remanded to the trial court for an opportunity to make findings to support, revise, or remove condition K.

FOR THE COURT:

_____

Associate Justice

¶ 74. **SKOGLUND, J., dissenting in part.** I wholeheartedly agree with the majority's resolution of this case except for its conclusion that Condition S, which requires defendant to

---

[23] We recognize the value of templates and forms that include the conditions most frequently found to be reasonably necessary to ensure that an offender will lead a law-abiding life. Because forms contain conditions imposed frequently, it is especially critical that the conditions included in the form are clear and consistent with statute and this Court's caselaw. See, e.g., Freeman, 2013 VT 25 (condition delegating unfettered authority to probation officer to restrict where defendant lives and works invalid unless supported by findings explaining why such delegation is necessary); Sanville, 2011 VT 34, ¶¶ 9-10 (concluding that condition prohibiting "violent or threatening behavior" did not "fairly inform defendant of what actions might subject him to probation revocation"). Moreover, as noted above, the structure of such a template—including whether it provides check-boxes or another means of clearly identifying the specific conditions imposed by the court—can affect the clarity and use of the template or form. For these reasons, we have asked the Criminal Oversight Committee to review existing forms and recommend changes to improve the clarity and enforceability of the resulting orders.

repay charges for public-defender legal services, is sufficiently linked to his conviction because the legal costs were incurred for his defense. The condition lacks any reasonable relationship to defendant's crime or rehabilitation. Further, it is a blatant attempt at using probation as a debt-collection agency. I dissent.

¶ 75. Defendant was convicted of disorderly conduct and grossly negligent operation of his motor vehicle. There is nothing in this case that suggests that defendant's crime was in any way related to a failure to satisfy financial obligations, manage his finances, or comply with court orders. See State v. Peck, 149 Vt. 617, 623, 547 A.2d 1329, 1333 (1988) (requiring that conditions be "reasonably related" to defendant's rehabilitation). I can conceive of no analysis that makes this condition of probation a means of ensuring that defendant will lead a law-abiding life or help him to do so. 28 V.S.A. § 252(a). Thus, the probation condition requiring defendant to repay amounts due for public-defender services lacked a sufficient nexus to his criminal conduct or rehabilitation. State v. Whitchurch, 155 Vt. 134, 137, 577 A.2d 690, 692 (1990).

¶ 76. When a public defender is assigned to represent a defendant in a criminal case, it is because the court has determined that the defendant cannot afford private counsel at his own expense without undue hardship. 13 V.S.A. §§ 5231, 5236. Payment and expenses of assigned counsel are made from funds appropriated to the Office of the Defender General for the compensation of assigned counsel. Id. § 5205 (c). The costs of representation and accompanying services, such as clerical support, investigative services, and, if the court finds them necessary, laboratory tests, come from the budget of the Defender General. The trial courts bear no responsibility for the Defender General's budget. State v. Handson, 166 Vt. 85, 89-90, 689 A.2d 1081, 1084 (1996).

¶ 77. While the court can order a defendant to pay for all or part of the representation based on his ability to pay, 13 V.S.A. § 5238, there is no justifiable reason to then attach a penalty to a delayed payment or failure to make the ordered payment that would result in revocation of probation. Condition S of the probation conditions is nothing more than a debt-

collection tool with completely inappropriate consequences. Debtor's prison went the way of the stocks.

¶ 78.    Because the evidence does not support the conclusion that Condition S is reasonably related to defendant's rehabilitation in light of the crime for which he was convicted, I would strike condition S. I respectfully dissent on this issue.

¶ 79.    I am authorized to state that Judge Maley joins this dissent.


_____

Associate Justice